FRANCES WOODRUFF, plaintiff in error, *vs.* JAMES M. WOODRUFF, *et al.*, defendants in error.

1. Where a testator, by his will, directs that certain property bequeathed by him shall be divided into four shares, and further directs, that one of these shares shall be vested in, and become the property of J. N. W., in trust for testator's daughter, F. W., and "*her heirs born and to be born*": *Held*, that the bequest vested in the daughter a life estate in the property, with remainder to her children, whensoever born.

Bill in equity, in Newton Superior Court, and decision on demurrer, by Judge E. G. CABANISS, at Chambers, on the 18th of October, 1860.

James M. Woodruff, George W. Woodruff, and Reuben T. Woodruff, exhibited their bill in equity, returnable to the September Term, 1860, of Newton Superior Court, against their mother, Frances Woodruff, alleging that James Roseberry, the grand father of the complainants, died in said county of Newton, leaving in full force a will, which was duly proved and recorded ; that in and by said will the testator, after some specific legacies directed that certain property specified in the will, and also described in complainants' bill, should be divided into four equal shares, and that one of the four shares should be " vested in, and become the property of, John N. Williamson, in trust for his daughter, Frances Woodruff, and her heirs, born and to be born ;" that in the division of the property bequeathed, certain negroes

were allotted to the said Frances Woodruff, which, with their increase, she now has in possession, and threatens to carry the said negroes out of said county of Newton.

The complainants claim an interest in the negroes, either as joint tenants with their mother, the said Frances Woodruff, or as remainder-men, after the termination of her life estate in the property, and they pray that an equal division of the property may be made between all the joint tenants, so far as to ascertain, and set apart the distributive share to which each is entitled, or, in the event it should be held, that theirs is an interest in remainder, that the said Frances Woodruff may be decreed to give bond, with sureties resident in Newton county, for the forthcoming of said negroes, to be delivered to the remainder-men at the death of the said Frances.

The defendant set up a demurrer to the bill, insisting that the bequest in the will vested an absolute estate in the negroes, in herself, and that complainants had no interest in them, either as joint tenants or remainder-men; and insisting also that if it should be held that complainants did have an interest in the property, they ought to be compelled to elect, either to claim as joint tenants or as remainder-men.

Upon hearing argument for and against the demurrer, the presiding Judge overruled the same, and the plaintiff in error seeks a reversal of that decision before this Court.

CLARK & LAMAR, for plaintiff in error.

FLOYD, STANCELL & GLASS, *contra.*

*By the Court.*—JENKINS, J., delivering the opinion.

The questions for the consideration of the Court in this case are, whether, under the will of James Roseberry, the defendant took any interest in certain property now in the possession of their mother, the plaintiff in error, and if so, what interest ?

The bequest was of certain slaves " to John N. Williamson, in trust for my daughter, Frances Woodruff, and her heirs, born and to be born."

It is conceded that at the time of the making of said testament the defendants in error were in *esse,* and that since that time other children have been born to Frances Woodruff.

For the plaintiff in error, it is insisted that the word "heirs" is to be considered as a word of limitation, notwithstanding the superadded words "born or to be born." These words, it is said, do not at all vary the legal signification of the word "heirs," which without them, in this connection would vest the entire interest in Francis Woodruff. It is the duty of Courts in construing wills, if possible, to give effect to every word used by testators. The first inquiry, then, is, whether the superadded words "born or to be born" give expression to any idea in the testator's mind, which, without the use of them, would have slumbered. If they do, and by any reasonable interpretation we can ascertain that idea, we have no right to reject the words which are its exponents. If he meant nothing by the words "born and to be born," then he simply meant to give to Frances, at his death, such interest in his property as he then had— the absolute interest. This interest he meant she should be at liberty to alien by deed, or by will, and if she should die without having disposed of it in either manner, he meant that it should go, not by any act of his, but by operation of law, to such persons as might be her heirs-at-law. To effect this object, it would have sufficed to stop at the word heirs. The fact that he did not so stop, would indicate that he had something to say relative to those heirs. · If the superadded words, taken in connection with the word heirs, point to a class of persons distinct from all others, then they mean something; they convert the word "heirs" into a word of purchase. If by "heirs" he meant heirs general—meant only to indicate the quality of interest his daughter was to take in the slaves—of what consequence was it whether or not those persons who would, at his death, be her heirs-at-law, were then "born or to be born?"

It is only on the supposition that he meant to give her a limited interest in the property, and to limit it, after that, to

Woodruff *vs.* Woodruff *et al.*

certain other persons then in his mind, that it could be a question of importance whether those persons so to take in the future were all in life at the execution of his will. The inference seems clear that he had a class of persons in his mind, at the moment, and the next question is, whether that class of persons can be ascertained. To answer the description they must be persons, some of whom were then in *esse*, others in *passe*, all of whom surviving her would, at her death, stand in the same relation to her—would be her heirs-at-law, to the exclusion of all others—were there such. The fact is, when the will was published she had *children;* the *possibility* was, she might have more. The children she then had, and any she might afterwards have, surviving her, would be her heirs; would constitute a class of persons from which no one of them could be excluded, and from which all other persons would be excluded. They answer the description, which no other person could satisfy. They are children of Frances, " born and to be born." Would it not be wilfully closing the judicial mind against testamentary intention, to hold that he did not mean distinctly to provide, by his own act, for her children? The question still remains, what interest did they take? Are they to be regarded as tenants-in-common with their mother, or did she take a less estate, with remainder to them? We hold the latter opinion. Whilst the superadded words give to the word "heirs" the significance of children, we are not entirely to lose sight of its proper meaning. To give full effect to the words " heirs, born or to be born," *in this case,* we must understand " children being heirs, living at the date of the will and thereafter to be born." Inasmuch as, "*nemo hœres est viventis,*" the class of persons to take after Frances Woodruff, must be postponed until her death, we therefore construe the bequest to vest in her a life estate, with remainder to her children, whensoever born. The case of Goss and wife vs. Eberhart, administrator, 29 Ga. Rep., 545, sustains this view. We think, therefore, that the demurrer was properly overruled.

Let the judgment be affirmed.