## TRISTAM BURGES *vs.* ROBERT THOMPSON *et als.*

Devise as follows:

"I give, devise, and bequeath all and singular my real and personal estate, whatsoever and wheresoever, at the time of my decease, unto and to the use of my wife S. for and during the term of her natural life. And from and immediately after the decease of my said wife, I give, devise, and bequeath one half part of my said real and personal estate, unto and to the use of such person or persons, and for such estate and interests therein, as my said wife by her last will and testament in writing, executed in due form of law, shall direct, limit or appoint, and in default of such direction, limitation, or appointment, or if incomplete, so far as the same shall not extend, I give, devise, and bequeath the said half part of my real and personal estate unto my own right heirs forever."

S. executed the powers thus given her, by the following devise:

"I give, devise, and bequeath another sixth part of said undivided half of said estate unto my son, T., for his use during the period of his natural life, and upon his decease, to his heirs at law, him surviving, share and share alike, with power, however, to sell and dispose of the same during his life, with the written consent of each of the surviving heirs at law of my said husband. In case of such sale he shall have the use of the proceeds thereof during his life, and upon his decease the same shall go to his heirs at law, share and share alike. . . .

"The foregoing devises and bequests of the said undivided half part of said estate of my deceased husband are and each of them is subject to the proviso and condition, however, that my said daughter M. may and shall have the power to select and appoint some suitable person to collect and receive, and who shall have power to collect and receive, as well the proceeds of the sales of such parts and portions of the estate so devised as may be sold or disposed of in pursuance of the terms and provisions hereof, as also the rents and profits of such proceeds, and of the estate so devised and bequeathed as aforesaid, and to divide and pay over the same to my said children in the proportions in which they shall be entitled to the same as hereinbefore specified; but she shall in no event be held to be liable for any default in the payment of the same."

*Held,* that under these devises T. took a life estate only, and that the devise to T. did not fall under the rule in *Shelley's Case.*

BILL IN EQUITY for specific performance. The case is stated in the opinion of the court.

*July* 12, 1882. DURFEE, C. J. This is a suit in equity to enforce the specific performance of a contract by which the complainant agreed to sell, and the defendant Thompson to purchase, one undivided twelfth part of a lot of land lying in the city of Providence, and commonly known as the Hoyle Tavern estate. Thompson defends the suit on the ground that the complainant cannot convey to him a good title.

The bill shows that the complainant gets his title from his father, the late Tristam Burges, who was formerly the owner of said estate, and who died leaving a will which contained the following clause, to wit: " I give, devise, and bequeath all and singular my real and personal estate, whatsoever and wheresoever, at the time of my decease, unto and to the use of my wife Sarah, for and during the term of her natural life. And from and immediately after the decease of my said wife, I give, devise, and bequeath one half part of my said real and personal estate unto and to the use of such person or persons, and for such estate and interests therein as my said wife by her last will and testament in writing, executed in due form of law, shall direct, limit, or appoint, and in default of such direction, limitation, or appointment, or if incomplete, so far· as the same shall not extend, I give, devise, and bequeath the said half part of my real and personal estate unto my own right heirs forever." The will was admitted to probate July 13, 1863. Sarah W. Burges, the wife of said testator, died in 1879, leaving a will dated August 1, 1878, by which, as donee of the power aforesaid, she made an appointment in favor of the complainant as follows, to wit: " I give, devise, and bequeath another sixth part of said undivided half of said estate unto my son, Tristam Burges, for his use during the period of his natural life, and upon his decease to his heirs at law, him surviving, share and share alike, with power, however, to sell and dispose of the same during his life with the written consent of each of the surviving heirs at law of my said husband. In case of such sale he shall have the use of the proceeds thereof during his life, and upon his decease the same shall go to his heirs at law, share and share alike." By another clause of her said will the said Sarah W. subjects her said appointment, and other appointments of said will, to a certain proviso or condition in the words following, to wit: " The foregoing devises and bequests of the said undivided half part of said estate of my deceased husband are and each of them is subject to the proviso and condition, however, that my said daughter, Mary B. Souther, may and shall have the power to select and appoint some suitable person to collect and receive, and who shall have power to collect and receive, as well the proceeds of the sales of such parts and portions of the

estate so devised as may be sold or disposed of in pursuance of the terms and provisions hereof, as also the rents and profits of such proceeds and of the estate so devised and bequeathed as aforesaid, and to divide and pay over the same to my said children in the proportions in which they shall be entitled to the same as hereinbefore specified ; but she shall in no event be held to be liable for any default in the payment of the same."

The complainant claims that, by virtue of the two wills, and under the rule in *Shelley's Case,* he is entitled in fee simple to one undivided twelfth part of said Hoyle Tavern estate, and that the restriction attempted to be imposed on his power of disposing thereof, and the proviso and condition aforesaid, are inconsistent with the estate appointed, *ultra vires,* and void.

The rule in *Shelley's Case* is, that when, by deed or will, real estate is conveyed or devised to a person for life, and then in the same instrument to his heirs, or to the heirs of his body after him, the words "heirs" or "heirs of his body" are to be construed as simply words of limitation, which mark out the quantity of the estate, and the person named takes, not for life merely, but according to the limitation, either in fee simple or in tail. The rule has been frequently recognized in this State, and in some cases quite rigorously applied. *Eaton* v. *Tillinghast, Trustee, et als.* 4 R. I. 276 ; *Manchester and wife* v. *Durfee,* 5 R. I. 549 ; *Bullock* v. *The Waterman Street Baptist Society,* 5 R. I. 273 ; *Cooper et al.* v. *Cooper,* 6 R. I. 261 ; *Jillson* v. *Wilcox,* 7 R. I. 515 ; *Sutton* v. *Miles,* 10 R. I. 348 ; *Brownell* v. *Brownell,* 10 R. I. 509. The rule is inflexible when the words are used with nothing to qualify them, but if they are used in connection with explanatory language, which shows that they were used, not with technical accuracy, but inartificially to denote particular persons, then they will be permitted to have effect accordingly, especially in wills. In *Doe on dem. Bosnall* v. *Harvey,* 4 B. & C. 610, 621, Mr. Justice Bailey luminously expounded the rule in these words, namely : "that where, in a deed or will, there is a limitation of an estate of freehold to a man, and afterwards to the heirs of his body, so as to give it to the heirs *as a denomination or class, including the whole line of heirs,* the words 'heirs of the body' are to be construed as words of limitation, and the heirs then take by descent,

but when they are used to designate only certain individual persons answering the description of heirs at the death of the donee or devisee, then they are words of purchase." The question, then, in any particular case involving the use of the words, is, are the words used in connection with qualifying language or provisions which clearly demonstrate that they were used, not in their technical meaning, but popularly to designate certain persons answering to the description of heirs of the person named to take for life at his death, for if they were so used, then the persons so designated will take, not as heirs by descent, but as purchasers under the conveyance or devise, whereas if there be no such language or provision, or if the language or provision be uncertain in meaning, then the words must be construed technically as words of limitation.

In the case at bar the will or appointment executed by Mrs. Burges evidently contains language and provisions which raise the question whether the word " heirs," as used in the appointment, was not rather used to designate particular persons than in its strict technical meaning. The appointment was " to my son, Tristam Burges, for his use during the period of his natural life, and upon his demise to his heirs at law *him surviving, share and share alike.*" We call attention first to the words " him surviving." It may be thought that these words are insignificant, because no one can be an heir of another if he dies before him. But their great significance is that they indicate that the testatrix, when she used them in making her appointment, was thinking, not of a mere undeveloped aggregate or line of descent, but of particular persons who were to be alive when her son died, and who would then answer the description of his heirs, and that it was to these persons that she appointed the estate after him. The words " share and share alike," which follow, expand and emphasize the conception, for they tend to show, though alone they would be insufficient to show, that the testatrix, when she spoke of heirs, used the word distributively, and not as " a *nomen collectivum* for the whole line of descent." And, further, they tend to show very clearly, taken in connection with the other words, that it was in the mind of the testatrix that these " heirs at law," as she called them, were to take, not in their character as heirs, by inheritance from her son Tristam, but as her appointees, under the will of Tristam Burges,

the elder, and therefore as purchasers under that will. They were to take by her appointment, for they were to take share and share alike, whereas if they were to take as heirs, they would have to take by the law of inheritance, which might or might not give them equal shares. This interpretation, too, accords with the provision which next succeeds. By this provision she gives to her son Tristam power to sell the estate with the written consent of the surviving heirs of her husband. The provision, if the estate appointed to Tristam be regarded as a fee, would be a restriction on his power to dispose of it, and void for repugnance. But very clearly she did not deem it a restriction. Her language is " with power *however*," showing that her purpose was to communicate a power which otherwise he would not possess. And in case the estate is sold the testatrix does not let the law take care of the proceeds, but appoints them to go, after Tristam, to "his heirs at law, share and share alike." The rule in *Shelley's Case* is less inflexible as applied to personalty than as applied to realty, and the word " heirs " is more readily construed as designating persons. *Jacobs* v. *Amyatt*, 4 Bro. C. C. 542 ; *Wilson* v. *Vansittart*, Amb. 562 ; *In re Jeaffreson's Trusts*, L. R. 2 Eq. 276. The subsequent provision, too, for the appointment of a trustee, accords better with a devise for life than with an unlimited devise in fee simple, if, indeed, construing the devise as for life, a trust is not the right thing, in case of sale, to protect the remainder. Can we then hold that this language and these provisions of the will, considered as indications that the word "heirs" was used to designate particular persons, are strong enough to overcome the presumption that the word was technically used, and, by so holding, harmonize the will substantially in all its parts ; or must we, on the contrary, at the cost of a good deal of discord and inconsistency in the will, hold that the presumption, however shaken by the indications, is nevertheless too strong for them and still stands ? It seems to us that, in point of principle, we can safely conclude that the presumption has been overcome.

It may be well, however, to consider the case on precedent as well as on principle. In *Doe ex dimiss Long* v. *Laming*, 2 Burr. 1100, decided in 1760, the devise was of land held in gavel-kind to " A. C. and to the heirs of her body, lawfully begotten, or to

be begotten, as well females as males, and to their heirs and assigns forever, to be divided equally, share and share alike, as tenants in common and not as joint tenants," and it was held that the words "heirs of the body" were words of purchase, mainly because the devise was inconsistent with the course of descent in gavel-kind. This decision, however, though never expressly overruled, was not received with entire approval, and now in England, after a good deal of doubt and conflict of opinion, it may be regarded as settled that mere distributive directions, however inconsistent with the course of descent, annexed to the words " heirs," or " heirs of the body," will not change them from words of limitation to words of purchase. Accordingly it has been held that a devise to A. for life, and after his decease to the heirs of his body, to take as tenants in common, or in such shares and proportions as A. should appoint, and, in default of appointment, share and share alike, or to them as well male as female to take as tenants in common, is not relieved by the superadded words from the rule in *Shelley's Case. Bennett* v. *The Earl of Tankerville,* 19 Ves. Jun. 170 ; *Doe on dem. Atkinson* v. *Featherstone,* 1 B. & A. 944 ; *Doe on dem. Cole* v. *Goldsmith,* 7 Taunt. 209 ; *Doe on dem. Wright* v. *Jesson,* 5 M. & Sel. 95 ; *Jesson et al.* v. *Wright et als.* 2 Bligh 1 ; *Doe on dem. Bosnall* v. *Harvey,* 4 B. & C. 610. The most authoritative of these cases is *Doe on dem. Wright* v. *Jesson.* The case was first decided in 1816 in the Court of King's Bench. There the decision was that the devise was to the first taker for life with remainder to his children for life as purchasers. The case was carried to the House of Lords, where, in 1820, after great consideration, the decision of the Court of King's Bench was reversed, and it was decided that the first taker had an estate tail. The ground of decision was that the general or paramount purpose of the devise included the entire issue or succession, and that to effectuate this purpose the estate must be held to be an estate tail, the distributive directions giving way to it. All the cases concede, however, that whenever it is perfectly clear in any given case, from other language, that the technical words are used, not collectively for the inheritable succession, but distributively for particular persons, such persons will take as purchasers.

In regard to these decisions it will be observed that they will apply with full force as precedents only to cases where the words of inheritance are simply coupled with distributive directions and nothing more, and therefore do not cover the case at bar. It may be further remarked that there is a difference between our law and the English law, which makes it easier in this country to construe the words as *descriptio personarum*. In England the eldest son is generally the sole heir, and therefore the word in the plural must generally be held to mean the succession, unless it is clear that persons, who can only in some loose form of speech be described as heirs, are meant to be designated. There can be no doubt that this consideration, which is of no avail here, has had a very appreciable effect in England. 6 Greenleaf's Cruise, cap. xiv. § 20. Lord Mansfield, in *Doe ex dimiss. Long* v. *Laming*, 2 Burr. 1100, relied on the fact that the lands were held in gavel-kind to parry the force of it. Moreover, under our statute, Pub. Stat. R. I. cap. 182, § 5, a devise to heirs as purchasers gives an estate in fee, and not merely an estate for life, which is all such a devise was held to give by the King's Bench in *Doe on dem. Wright* v. *Jesson*. In England, too, a strong pride of family, which is. cherished there, has contributed a kind of sentimental strength to the rule in *Shelley's Case*. And finally it may be added that it seems almost as if some of the old English lawyers had fed on the abstruse learning of the rule until it had become a sort of superstition or fanaticism with them. We make these remarks, however, not to derogate from the authority of the cases, where they are in point, for to that extent they were fully recognized in *Bullock* v. *The Waterman Street Baptist Society*, 5 R. I. 273, 276, but to define their authority and guard against any undue extension of it.

In this country the cases in point are not numerous. In *Lessee of Findlay et al.* v. *Riddle*, 3 Binn. 139, a devise to A. for life and " after his decease, if he shall die leaving lawful issue, to his heirs as tenants in common and their respective heirs and assigns forever, but in case he shall die without leaving lawful issue, then to B., the brother of A.," was held to vest in A. an estate for life only. In *Blake and wife* v. *Stone*, 27 Vt. 475, a grant to A. for life, remainder to the heirs of his body, except B., one of his sons, was

held to vest in A. a life estate only.    In *Hamilton* v. *Wentworth,* 58 Me. 101, a devise to A. for life "*without impeachment of waste,* and after his decease, to the heirs male of his body," &c., was held, on the strength of the words, "without impeachment of waste," and some other slighter indications, not to create an estate tail in A.    In *Slemmer* v. *Crampton,* 50 Iowa, 302, a devise to A. for life *only,* and after her death to her heirs, "free and clear of all liens and incumbrances thereon," was held to give A. only a life estate, the intent being to create a new stock of descent.    In *Fulton et al.* v. *Harman et al.* 44 Md. 251, the devise of real and personal property was to A. for life, and after his death the proceeds thereof to his lawful heirs, "first deducting the bequests already made," the testator having given bequests to two of A.'s children, "and when the others become equal, then the balance shall be divided between them, share and share alike," and the court construed the devise to give an estate to A. for life, remainder over to his "lawful heirs," subject to deduction, as purchasers.    The case is in some of its features a good deal like the case at bar.    In *Woodruff* v. *Woodruff et al.* 32 Ga. 358, a devise in trust for the testator's daughter and her heirs "born and to be born," was held to vest an estate for life only in the daughter, with remainder to her children "born and to be born," as devisees under the will.    The words "born and to be born," used in that case, are closely analogous to the words "him surviving," in the case at bar.    They were held to show that the word "heirs" was used as a synonym for children.    We also refer, for an excellent exposition of the law, to *Guthrie's Appeal,* 37 Pa. St. 9.    And see *Chew's Appeal,* 37 Pa. St. 23, 27.    *Sisson* v. *Seabury,* 1 Sumner, 235.    And, for examples of a more stringent and unyielding construction, see *Criswell's Appeal,* 41 Pa. St. 288, and *Clarke* v. *Smith,* 49 Md. 106. In *Bullock* v. *The Waterman Street Baptist Society,* 5 R. I. 273, which is the only Rhode Island case that has any special pertinence, the devise was to a child for life, "and after him to his heirs forever," but in a separate clause the testator declared that all gifts and bequests to his children were "for life only, and then to go to their several heirs forever, share and share alike."    The court held that the first taker, notwithstanding the distributive direction, had an estate in fee simple, the words "heirs *forever*"

being manifestly used to designate, not particular persons, but the entire line of descent.

We find in these cases, taken all together, more to increase than to diminish our confidence in the opinion previously expressed. The bill will therefore be dismissed, but, the suit being amicable, without costs.                                    *Bill dismissed.*

*Charles H. Parkhurst*, for complainant.

*Edwin Metcalf*, *George B. Barrows & Charles -Bradley*, for respondents.