That the testator intended John Wyatt and his wife to have no more than the enjoyment of the subject devised, during their lives and that of the longest liver, seems evident from the terms he uses in the will. He "lends the use and occupation" of the plantation to them "during their natural lives, and to the longest liver," and he "leaves them the chattel property during their lives as aforesaid"; (249) thus showing his wish that they should be restrained from the power of disposing of the land, so as to defeat the ulterior devise to their *Page 106 
heirs. He then provides that after their decease all the property thus given shall go to the heirs of their bodies lawfully begotten, to be equally divided among them and their heirs forever.
It is argued on the part of the defendants that whatever the testator's intent might have been, yet the legal operation of the devise was to give an estate for life to John Wyatt and his wife, and an immediate remainder to their heirs, and that in such a case the rule in Shelley's case applies, and vests in the ancestors an estate in fee simple.
I think it evident that the words "heirs of their bodies," as used in this will, were designed to secure the estate in the first place to the descendants of John and Parthenia, and to make their issue the stock or root of the future succession, since if they had both died without leaving such issue, it would have contravened the intent of the testator to suffer the property to devolve on their collateral heirs. Upon the death of the devisees it would have vested in their lineal descendants as tenants in common, but the design of the will having taken effect, it would be an absolute estate in such children or grandchildren, descendible to their heirs general.
According to the authorities, "heirs of the body" have been held to be words of purchase, when the testator hath superadded fresh limitations, and grafted other words of inheritance upon the heirs to whom he gives the estate, thereby showing that those heirs were meant by the testator to be the stock of a new descent. Where the heirs are thus made ancestors it is evident that the terms "heirs of the body" are merely descriptive of the persons intended to take, and import such sons and daughters of the tenant for life as shall also be heirs of his body. This exception to the rule in Shelley's case is well established by the cases (250) referred to, particularly Archer's case, 1 Rep., 55, and Lisle v. Gray and Lowe v. Davies.
Although it appears plain to my apprehension that the heirs take as purchasers, yet I think it unnecessary to say much more on this point, because it can make no difference in the decision of the cause, since in neither case could William Wyatt become entitled to anything during the lifetime of his parents.
There are not on the face of the will any sufficient indications that the testator meant to use the word "heirs" in any other than its technical sense, that is this, those who should answer the description upon the death of the ancestor, until which event it must be unknown who would be his heirs. On the contrary, the will devises it to the heirs after the decease of the father and mother, and it is consequently a contingent remainder to those who should be heirs of the body on the death of the survivor. As the real and personal estate are disposed of by the same words, the construction must be the same in both, and no part of either vested in *Page 107 
William Wyatt. The husband and wife had a joint estate for life in both, and upon the death of either, the survivor became entitled for life; nor does it seem to me that it was such an interest in the wife as the husband might have assigned or released, so as to destroy the right of survivorship. Shepherd's Touch., 344; Cro. Car., 222; 1 Salk., 326; Cro. Jac., 570. I am of opinion that William Wyatt, having died before his surviving parent, took nothing in either real or personal property.