JOHN HAMILTON, by guardian, *vs.* DANIEL WENTWORTH.

*Will—construction of. Real action.*

A testator devised unto his grandson certain land, " to have and to hold the same to him, the said " devisee, "for and during the term of his natural life, without impeachment of waste; and after his decease, to the heirs male of his body; and in default of heirs male, to the heirs female of his body; and for want of heirs female, to " the testator's son M. during the term of his natural life; and after his decease, to his heirs in tail. *Held,* That the grandson of the testator named took an estate for life, and that at his decease, his eldest surviving son an estate in fee-tail.

The words " heirs male " in such case are to be construed as words of purchase and not of limitation.

By virtue of R. S., c. 104, §§ 3 and 8, a real action in which the writ claims an estate in fee-simple, cannot be maintained by proof of one in fee-tail only.

ON FACTS AGREED.

REAL ACTION to recover a tract of land in Lebanon, in this county, the plaintiff claiming in his writ an estate in fee-simple. He claims title under and by virtue of the will of Jonathan Hamilton, his great grandfather. Rufus Hamilton died May 30, 1865.

The defendant pleaded the general issue and statute of limitations.

If the plaintiff has no title or right to recover in this action, he is to become nonsuit.

The remaining facts sufficiently appear in the opinion.

*Wells & Eastman,* for the plaintiff.

*W. J. Copeland,* for the defendant.

APPLETON, C. J. Jonathan Hamilton, the great grandfather of the plaintiff, died seized of the demanded premises, in 1811. By his will, dated July 6, 1810, and duly proved and allowed June 18, 1811, he devised the premises, after sundry devises, to his son, Millet Hamilton, as follows: " Also I give and bequeath to my

grandson, Rufus Hamilton, one hundred and twenty acres of land in Lebanon, in said county of York, adjoining to land formerly belonging to John Kenney, Esq., deceased, and to land of Jonathan Burrows, and others, with the buildings thereon, and the appurtenances thereto belonging, to have and to hold the same to him, the said Rufus, for and during the term of his natural life, without impeachment of waste, and after his decease, to the heirs male of his body lawfully begotten, and in default of heirs male, to the heirs female of his body, and for want of heirs female to my said son, Millet Hamilton, during the term of his natural life, and after his decease, to the heirs male of his body lawfully begotten, and in default of heirs male, to the heirs female of his body, and for want of heirs female to the heirs of the body lawfully begotten of my daughter, Hannah Carr, and in default thereof to the heirs of the body of my daughter, Sukey Haggans."

After sundry devises to said Hannah Carr and Sukey Haggans, the will contains the following clause :

" Also, it is my will that the within and foregoing legacies and bequests to my said son, Millet Hamilton, my said grandson, Rufus Hamilton, my said daughter, Hannah Carr, and my said daughter, Sukey Haggans, and their respective heirs, and each and all their heirs, male and female, lawfully begotten as aforesaid, inherit the same as in each bequest is particularly expressed. But in case of default, or want of such lawful heirs, male and female, for the space of two hundred years from and after my decease, I will and order that all the property mentioned in the bequests aforesaid vest in the officers and overseers of the Congregational church in the first or south parish in the town of Berwick, in said county, and their successors, to have and to hold the same forever."

Rufus Hamilton married, and had sons and daughters. The plaintiff, his oldest son, was born in April, 1817. Rufus Hamilton resided on the demanded premises until Nov. 24, 1824, when by deed of warranty he conveyed a part of the demanded premises to Samuel Wentworth. On the 2d April, 1824, by deed of warranty, he conveyed the remainder of the demanded premises to Benjamin

Gerrish. Said Wentworth and Gerrish entered into the possession of the tracts respectively conveyed to each, and they, or those claiming under them, the tenant included, have remained in open and peaceable possession, thereof claiming to hold the same in fee-simple to the date of 'the writ.

The material question to be determined is, What was the estate Rufus Hamilton took under the will?

The language of different wills is as variant as the purposes to be subserved, or the objects to be gained by its use. It is an uniform rule in their construction that the intention of the testator is to govern. That intention is to be gathered not merely from the language of a particular devise, but from all the different provisions of the will under consideration. It may be assumed that the testator did not intend opposite and contradictory provisions. They are, therefore, to be considered in determining the meaning of a particular devise. The intention, when gathered from the specific language of the devise, in connection with the other parts of the will, is to control.

There would seem to be little doubt of the intention of the testator in his devise to his grandson. He did not intend to give him the power of alienation. His primary intent was to keep the estate in his own blood. Accordingly, the devise is to Rufus Hamilton "for and during the term of his natural life." The estate is one for life by its specific terms. There can be no misconstruction of the meaning of the words used. It was to be "without impeachment of waste." This shows a life-estate was intended. If it was the intent of the testator to give an estate in fee or fee-tail, this provision could be of no use. The estate devised would be forfeitable for waste, and the intention was to guard against such forfeiture. "After his decease," the estate was to vest, according to the terms of the devise, in the heirs male of his body.

Nor is this all. By recurring to the other devises, it is obvious that the testator was careful in the use of language. In the devise to Millet Hamilton, he gives him one tract "to hold the same to him, the said Millet, for and during the term of his natural life,

" without impeachment of waste ; and after his decease, to the heirs male of his body, lawfully begotten, and in default of heirs male, to the heirs female of his body, and for want of heirs female, to the heirs of the body of (my) his daughter, Hannah Carr, lawfully begotten, and in default thereof, to the heirs of the body of (my) his daughter, Sukey Haggans." Other tracts are devised to him to hold " in fee-simple." He devises a portion of his estate to Hannah Carr in fee-tail, with a remainder to his son Millet " in fee," and another portion to Sukey Haggans in fee-tail, with remainder over to his son Millet in fee. It is apparent that these different forms of expression were adopted to produce different results—corresponding with the difference of language. When the testator intended an estate in fee-tail or in fee-simple, he used the appropriate language to convey such intention. When he intended a life-estate, he used words most manifestly indicating such purpose. To remove all doubt, he declares that each devisee shall " inherit the same as in each bequest is particularly expressed."

It has been argued that an estate tail was devised to Rufus Hamilton, and not an estate for life. But the testator knew and adopted the language aptly fitted to give an estate tail in his devises to his daughters. If he had intended to devise an estate tail to Rufus and to Millet, he would have used the same language as in the devises to his daughters. When he gives a fee-simple, he so says. Now, using different language in his devises, that difference was adopted to carry into effect different intentions. Had he intended a fee-tail for Rufus and Millet, he would have used the appropriate phrases. Not intending to give them an estate in fee-tail, but intending that estate for their heirs, he gives them an estate for life, with remainder over to their heirs in fee-tail, etc., except as to the portion which he devised to Millet " in fee-simple."

That this construction is in strict accordance with the intention of the testator, hardly admits of a doubt. A strict legal construction, or the technical sense of words, is never to prevail against the superior force of intention apparent in the will. The result is that Rufus Hamilton took an estate for life, and the plaintiff an estate

tail. The word "heirs" being used not as a word of limitation, but of purchase.

In *Pratt* v. *Leadbetter*, 38 Maine, 9, the testator made the following devise : " I give and bequeath unto my son, O. P., the land he is now in possession of, also one-half of lot No. 5 to him during his natural life to improve, and then to his heirs after him for their sole right. *Held*, that as the other clauses in the will furnished no evidence of an intention to give the devisee an estate of inheritance, he took only thereby an estate for life." In *Canedy* v. *Haskins*, 13 Metcalf, 389, the devise was in the following words : " I give to my brother W.'s son, N., during his natural life (after the decease of my wife), and to his eldest male heir, and after his decease, and to said male heirs and assigns forever, all and singular, my homestead," etc. At the time of making the devise, N. had no children ; afterwards he had several children, of whom the third son alone survived him. It was held that N. took a life-estate only, and that at his decease his surviving son took an estate in tail male. In *Blake* v. *Stone*, 27 Vermont, 475, the deed under consideration was to A. B. for life, and in remainder to the heirs of his body, except C. B., one of the sons of A. B., forever. It was held that this deed conveyed only a life-estate to A., and that the remainder vested in the persons, except C. B., who would become heirs of A. B. if they survived him,—they taking by purchase. "Now it is certain," says Wilmot, J., in *Long* v. *Lansing*, 2 Bur. 1100, " that in some cases, and under some circumstances, they (the words, heir or heirs), may be construed words of purchase, either upon a will or upon a deed. . . . They are not to be construed as words of limitation, either upon a will or upon a deed, when the manifest intention of the testator or of the parties is declared to be, or clearly appears to be, that they shall not be so construed." It is apparent from the devise and from the whole will, that the words "heirs male" are to be construed as words of purchase and not of limitation.

The plaintiff in his writ claims an estate in fee-simple. The evidence shows one in fee-tail. By R. S., 1857, c. 104, § 3, the demandant is to set forth the estate claimed. This he having failed to

do, the action is not maintainable. *Rawson* v. *Taylor*, 57 Maine, 343.

No motion to amend was made at *nisi prius*, as was the case in *Howe* v. *Wildes*, 34 Maine, 566. It does not appear that the counsel for the tenant was aware of the existence of any request for an amendment in the argument of the plaintiff's counsel. The amendment under the circumstances is not allowed. *Plaintiff nonsuit.*

CUTTING, KENT, WALTON, BARROWS, and DANFORTH, JJ., concurred.