### W. J. IRVINE v. JAMES NEWLIN.

1. HEIR. *Meaning of in will. Devise of remainder.*
    The word "heirs" used in a will in the devise of a contingent remainder must be construed in its technical sense, unless the will show clearly that it was used by the testator in a different sense.

2. SAME. *Use of word in devise of remainder. Case in judgment.*
    B. died, leaving a will by which his estate was to go to his wife, M., for life, remainder over to the heirs of C. The latter was then living, and at the time of his death was still surviving with nine children. *Held*, that there being no heirs of C., she being alive at the death of M., when the particular estate terminated, the remainder failed for want of persons to take it under the will.

3. SAME. *Inheritance from illegitimate. Act of 1846, Hutchinson's Code, p. 501, construed.*
    The act of 1846, Hutchinson's Code, p. 501, provided only for inheritance by and between illegitimates, and under it a legitimate sister could not inherit from an illegitimate brother.

APPEAL from the Circuit Court of Coahoma County.

HON. B. F. TRIMBLE, Judge.

Martin C. Ross was the illegitimate son of Mildred Crabtree, and he had an illegitimate brother, G. W. Crabtree, also a son of Mildred. He also had two half-sisters, Elinor Crabtree and Mary Friar, both of whom were legitimate children of Mildred Crabtree. Ross died in 1850 without issue, having made a will in which he left all of his property to his wife, Mahala S. Ross, during her life. The second and third clauses of the will were as follows:

"2. After the death of my wife, Mahala S. Ross, it is my will and bequest that one-third of my estate, real and personal, be given unto the heirs of Mary Friar, now living in Coahoma County.

"3. Also, I give and bequeath unto the heirs of Elinor Crabtree one-third of my estate, real and personal." .

After the death of Ross his wife took possession of his estate, which consisted of a piece of land, and leased the same to James Irvine for the term of his life. James Irvine died before the lease expired, and his heirs took charge of the lease, paying the rent regularly until the death of Mrs. Ross. After her death they continued in possession, but paid no rent. While the heirs of James Irvine were in possession one of them, W. J. Irvine, bought the land at a tax sale.

Elinor Crabtree, named in the third clause of the will of Ross, at the death of Mrs. Ross, had nine children, and she herself was living when this suit was instituted. Two of her nine children, Ann Winfrey and Thomas H. Crabtree, transferred their interests in this land, under the will, to James Newlin, the plaintiff in this suit. Elinor Crabtree, now Mrs. Ray, joined in the conveyance. Newlin brought this action of ejectment against S. P. Irvine for possession of the land. W. J. Irvine, of his own motion, was admitted to defend the suit. The court below rendered judgment for the plaintiff for two twenty-sevenths of the land. The defendant, W. J. Irvine, appealed.

*George Winston* and *Nugent & McWillie,* for the appellant.

1. The word *heirs* in the third clause of the will has its legal

63 Miss.—13

meaning. Said clause gave a contingent remainder to the heirs of Elinor Crabtree. The remainder was contingent because it could not vest until the death of Elinor Crabtree, when her heirs would be known, which might not happen until after the death of Mahala S. Ross, whose death before that of Elinor Crabtree would put an end to the particular estate before the vesting of the remainder, and thereby wholly defeat it. .

2. The word *heirs* in clause three of the will is to be construed in its strict legal sense.

There is no qualification annexed to the word nor anything else in the will to show an intention to use the word in a sense different from its legal sense, which is the sense in which the word is presumed to be used, unless the context clearly indicates the contrary, or, as it has been differently expressed, unless there is a plain demonstration in the will that the testator used it in a different sense. 2 Red. on Wills 427 (R. xvii of Jarman); Broom's Legal Max. 523; *Love* v. *Buchanan*, 40 Miss. 758; *Vannerson* v. *Culbertson*, 10 S. & M. 150; *Sims* v. *Conger*, 10 Geo. 231; *Rand* v. *Butler*, 13 Rep. 653 (48 Conn.); *Dodge's Appeal* (Sup. Ct. Pa.), 18 Rep. 764.

3. The fact that a qualification was annexed to the word *heirs* in clause two of the will does not change the construction of the word in clause three. There is no connection, grammatical or by reference, express or implied, between clauses two and three of the will. The meaning of clause three is perfect in itself, and does not militate against any other provision of the will; nor is there anything in the will, declarative of a common purpose, whence it may be inferred that the testator meant to use the word in clause three in the sense he used it in clause two. Broom's Legal Max. 590–1; 1 Red. on Wills 428 (R. xxii of Jarman).

4. Martin C. Ross was a bastard, and his sister, Elinor Crabtree, could not inherit from him at common law. *A fortiori* her children could not have inherited from him if she had not been living at his death. 4 Kent 413 (marg. page). Our statute then in force only changed the common law rule so far as to allow illegitimates to inherit from "*each other*," and did not permit a

legitimate to inherit from a bastard or *vice versa*.   Hutch. Code 501.

*Calhoon & Green*, for the appellee.

1. The will gave the one-third to either the children of Elinor Crabtree living at the date of the will, or living at the death of the testator, or living at the date of the death of Mahala S. Ross. In either case plaintiff's title is perfect.   Thomas H. Crabtree, who made the deed, must be presumed to have continued living until his death is shown.

Mrs. Crabtree joined in the deed, and that makes the plaintiff's title good, as she is sister to testator by the same mother, and therefore one of his heirs, even if the objections to the devise of her children were valid.

Mr. Jarmin, 2d on Wills 597, speaking of the great struggle to determine whether the testator used the word "heir" technically or as meaning heir apparent or heir presumptive in his notes—see notes 7 and 12—proceeds to collate the authorities pro and con in note 12.

2. It is fairly presumable the testator knew his sister Elinor was living at the date of the will.   In three clauses of the will he uses the word heirs—the second, third, and fourth—and it is hardly possible to resist the conclusion that, in each instance, he uses it, not technically, but in the sense of heirs apparent, that is, living children.

In the second clause he refers to the heirs of his sister Mary, and takes notice that that sister was then living.   This settles the construction that he meant, in that clause, her heirs apparent. Powell on Devises 248–251, and the numerous authorities cited in Jarman's note 12, above referred to, holding that the word "heir" means heir apparent where the ancestor was living at the date of the making of the will, although this fact is not noted in the will.

A fair resume of all the decisions will classify them thus :

A vast majority hold that a devise to the "heirs" of a living person means a devise to his children, one class of these holding it to mean the children living at the date of the will; another class holding it to mean the children living at the testator's

death; a third, and far the smallest class, holding it to mean the children living at the death of the person indicated as ancestor, and not permitting a lapse; a fourth class holding that it will lapse unless the will shows somewhere that the testator knew the person he indicated as ancestor was living when he published the will, in which case it would go to children then living; a fifth class holding that it would lapse unless the person indicated as ancestor was in fact alive at the date of the will, in which case it would go to the children then living; a sixth class holding that it would lapse unless the context shows that the testator designed the word heirs not technically, but to refer to persons as a class.

The case of *Heard* v. *Horton*, 1 Denio 168, while holding erroneously, as we submit, that a devise "to the heirs of" a person living at the date of the will is void, on the maxim *nemo est hæres viventis*, still holds that a devise to the heirs of A., who is stated in the will to be now living, would plainly refer to such persons as were at the time heirs apparent to A., those who would be his heirs if he should then die; and this conclusion is the same with many authorities cited in note 12, p. 597, of Jarman on Wills.

In *Quick* v. *Quick*, 21 N. J. Eq. 13, Chancellor Zabriskie held that such a devise meant such persons as would have been the heirs of the persons named as ancestor at the date of the execution of the will.

But we rely on the cases cited in note 12 *supra*, and so will not further cumber this brief by special citations of the cases.

The simple rule is that the children of Ellen Crabtree took as purchasers, that is, her children living at the testator's death, or at the making of the will.

CAMPBELL, J., delivered the opinion of the court.

The proposition deducible from the authorities is that *prima facie* the word "heir" is to be taken in its technical sense, unless there is in the will a plain demonstration that the testator used it in a different sense, in which case effect will be given to his intention.

There is some support for the doctrine that if it is shown *aliunde* that the testator knew that the person whose heirs are mentioned was alive at the making of his will, it will have the effect to change the meaning of the word "heirs" from its strict legal to a less accurate and popular sense, but after careful examination we have found this support very feeble and unsubstantial.

There is not a plain demonstration in the will of Martin C. Ross that he used the word "heirs" in the third clause of his will in any other than its strict legal sense, and as Elinor Crabtree was alive at the termination of the life estate in Mahala S. Ross, and being alive had no heirs, no estate vested by virtue of said third clause, which failed for want of persons to take according to its terms.

The third clause of the will is not helped by the preceding or any other. It is independent, and must be interpreted by its own terms alone.

The claim that the conveyance by Elinor Crabtree passed title, if the third clause of the will did not, because in that event Martin C. Ross was intestate as to the estate mentioned in the clause which failed of effect and he was childless, and Elinor Crabtree was his sister and one of his heirs, is not maintainable, because Ross was *nullius filius*, and under the act of 1846, in force when he died, a legitimate sister could not inherit from him, as that law did not embrace legitimate brothers and sisters, but provided only for inheritance by and among illegitimates.

These views dispose of the case and render unnecessary a consideration of the subordinate questions presented.

*Judgment reversed and new trial awarded.*