*HATTIE S. KIRBY ET AL. V. DANIEL BROWNLEE ET AL.

**1.** CONSTRUCTION OF DEEDS.

It is a fundamental principle of the construction of deeds, and all written instruments, that the expressed intention of the parties, when ascertained, shall be carried out. But there is an exception to this rule when applied to deeds, and that when the terms of the deed come within the rule in Shelley's case, the clear and unmistakable expressed intention of the grantor is not regarded, but an unreasonable and arbitrary rule of law is applied to defeat the expressed intention of the grantor, and this is still a rule of property in Ohio.

**2.** RULE IN SHELLEY'S CASE WILL NOT APPLY, WHERE—

Where the owner of certain lands, in contemplation of marriage, executes a deed by which the grantor conveys her separate property to a trustee to be held in trust for the sole and separate use of such grantor during her life, and in case of her death then her husband, if he survive her, is to receive the rents and profits during such survivorship, and further provided that upon the death of such survivor the property was to go to the grantor's lawful heirs: *Held*, that such marriage having taken place, and the grantor having died before her husband, then such property would vest in the grantor's lawful heirs, by force of the statute, and therefore the rule in Shelley's case would not apply to a deed of this kind.

APPEAL from the Court of Common Pleas of Hamilton county.

SWING, J.

This case is in this court on appeal, and was tried upon an agreed statement of facts.

The question in controversy arises out of the construction of the deed of Margaret Dickey. The facts connected with this deed are in substance these:

Patrick Dickey died intestate prior to 132, leaving three children, his heirs: Mary, Margaret and Catharine, children by his second wife.

Patrick Dickey left an estate, a part of which is the matter here in controversy. His three daughters partioned the estate left them; Mary, the oldest, taking her estate in severalty, and Margaret and Cath-

*This case was affirmed by the supreme court, without report, December 1, 1896. 55 O. S., 676.

arine taking theirs together. The property was so held when the deed in controversy was made, which was on the 17th day of September, 1832. This deed recites:

"That whereas a marriage is intended between Charles Duffield and Margaret Dickey; and whereas it is agreed that certain real estate, the separate property of the said Margaret, shall be secured to the separate use of the said Margaret, her heirs and assigns, upon the terms and conditions hereinafter to be recited:

"Therefore, this indenture, made this 17th day of September, 1832, between Margaret Dickey of the first part, Aaron G. Gano of the second part, and Charles Duffield of the third part,

"Witnesseth: That the said Margaret, for and in consideration of the uses and trusts hereinafter mentioned, hath, and by these presents doth, grant, bargain and sell unto the said Aaron G. Gano, all her undivided interest in the following property, to wit:        *        *        *

"To have and to hold the said described and other real estate to the said Aaron G. Gano, his heirs and assigns, forever, in trust nevertheless, and for the uses and purposes hereinafter to be expressed, to-wit:   Upon the taking effect of the said contemplated marriage between the said Charles Duffield and Margaret Dickey, the said Aaron G. Gano shall hold all the real estate hereby conveyed, for the sole and separate use of the said Margaret, who shall enjoy and receive the rents and profits to be paid unto her own hands, for which her receipt, notwithstanding her coverture, shall be a sufficient discharge, and to be for her own use and at her own disposal, so long as the said marriage contract shall remain in force between said parties. And upon this further trust, that in the event of the said Margaret's decease, with or without issue having been born of said Margaret, to hold the same for the use of the said Charles Duffield, if he survive her, during his natural life, the rents and profits during such survivorship to be paid to him for his separate use; and also upon the further trust, that in case said contemplated marriage shall not take effect, and when the uses and trusts hereby created, shall, according to the terms in which they are created, have effected their objects and be terminated, then the said Aaron G. Gano, or his heirs, shall convey said real estate to whomsoever may then be the right heirs of the said Margaret.

"And also upon this further trust, that in case the said Aaron G. Gano, acting as trustee, shall be of opinion that all or any portion of said real estate might be advantageously sold, and the proceeds advantageously invested, upon and subject to the uses and trusts in this deed expressed and declared, and the said Charles Duffield and Margaret shall sign a written consent to such sale, to be made, executed, witnessed and acknowledged with all the formalities necessary to the conveyance of real estate by a *feme covert*, then, and in that case only, shall it be lawful, and the said Aaron G. Gano is hereby authorized to effect such sale or sales, and to invest the proceeds upon and subject to the aforesaid uses and trusts; and the said Aaron G. Gano, for himself and his heirs, hereby agrees to accept the trusts hereby created, and covenants and agrees with the said Margaret and the said Charles Duffield, and that he and they will and truly execute and perform all said trusts; and the said Charles Duffield hereby assents to and ratifies and confirms all said trusts."

The subsequent facts which bear upon the controversy are, that on the following day Margaret Dickey and Charles Duffield became husband

and wife. To them two children were born. Margaret Duffield died December 20, 1840, leaving her husband and two children surviving her. One of the children died in June, 1841, aged six years, the other died in September, 1841, aged two years.

Charles Duffield re-married and died intestate in February, 1890, leaving ten children, the issue of the second marriage.

After the conveyance to said Gano, trustee, the undivided interests of Margaret and Catharine were amicably partioned, and from that time each held her interest in severalty. Said premises have been held by said Gano and his heirs ever since, the said Charles having received the rents after the decease of his wife, up to the time of his death.

There are three distinct interests claimed under this deed:

*First*—The surviving children of Charles Duffield by his second wife, who claim one-half of the estate.

*Second*—The heirs of May Dickey, the half sister of Margaret, who claim one-fourth of the estate; and

*Third*—The heirs of Catharine, the full sister of Margaret claim the whole of the estate.

If the fee of this property was in Margaret Duffield at the time of her death, she dying intestate, it passed to her children; and when one of her children died, its share passed to the other child, and upon the death of the last child, the one-half of the estate which came to it from its sister, would, under the law of Ohio then in force, pass to the father, Charles Duffield, and the half that came to the child dying last, directly from its mother, would have descended, as we think, equally to the heirs of Mary and Catharine Dickey. And if the fee was not in Margaret Duffield at her death, the children of Charles Duffield by a subsequent wife could, under no circumstances, be the right heirs of Margaret Duffield, to take upon the death of Charles Duffield. They not only could not take by force of the deed, but it would be unreasonable to suppose for a moment that Margaret, when she executed the deed, intended that they should. There was no possible tie that could bind them to her, or her to them.

We come now to the consideration of this deed. Did anything pass by it; and if so, what and to whom?

It is a fundamental principle of construction of deeds, and all written instruments, that the expressed intention of the parties, when ascertained, shall be carried out. It would be strange, indeed, if this were not true; for what would be the use of permitting one to execute a deed, or other written instrument, if the clearly expressed intention in the instrument was not to be enforced by the courts? But strange as it may seem, there is an exception to this rule when applied to deeds, and that is when the terms of the deed come within the rule in Shelley's case, the clearly and unmistakable expressed intention of the grantor is not regarded, but an unreasonable and arbitrary rule of law is applied to defeat the expressed intention of the grantor; and this is still a rule of property in Ohio, although long since abolished in most of the states.

Although we have abolished all the fictions of the law, and are living in the age of progress and reason and common sense, and while everything in the law tends towards brevity, simplicity and directness, this rule in Shelley's case still stands; not, however, regarded as it once was, as one of the wonders of wisdom of the law, but more in the nature of a freak, to worry and astonish new beginners and the uninitiated in the mysteries of the law. But this rule of law, we think, should not be

extended beyond its well defined limits, either as a rule of law or as a rule of construction. If this rule does not apply to this deed, Margaret Dickey took a fee under it, and therefore Charles Duffield could have had no life estate, which in fact he did enjoy for nearly fifty years; for a fee simple swallows up and merges all other estates. A fee simple is the whole estate, and while it may be subject to a minor estate, such as a term for years, or a life estate, these must, from their very nature, proceed the fee in their enjoyment; for no prece ent created estate may follow a fee. The owner of the fee being the owner of the whole estate, may do as he pleases with the estate, and this would be in its very nature inconsistent with this, that a former owner of the fee had created a life estate, which was to come into a right of enjoyment after the termination of the fee; for there must be a fee to support a life estate. In this case the fee that supported the life estate of Charles Duffield could not have been in his wife, Margaret, for she died in 1841, and she dying intestate, if she had this fee, upon her death, it passed to her heirs by force of the statute, and Charles Duffield's rights would have been whatever the statute gave him.

The rule in Shelley's case was adopted in England on the ground of public policy. The manifest and clearly expressed intention of the testator or grantor was defeated and held for nothing, and the one who was to take for life only, was vested with the fee simple in order to avoid the uncertain ties which might occur, as to who should enjoy the fee upon the termination of the life estate.

But as far as we know, this rule has never been applied to a deed of this kind. This deed, itself, is in the nature of a marriage settlement. Margaret Duffield was the grantor herself. She could not convey to herself a fee simple estate, for she already had that. She might have placed the legal title in another with the equitable title to herself. But we see no rule of law in the way of giving to such a deed, the effect which its terms clearly indicate should be given it. We see no reason to question but what the grantor intended by the terms used in this deed that she should enjoy the rents and profits of this estate, if she should marry during her life; that if she should die before her husband, he should enjoy the same during his life, and at his death it should come into the enjoyment of whomsoever should then be her heirs.

The marriage took effect, and Margaret died before her husband, and he has enjoyed the estate for nearly fifty years. This was in accordance with her clearly expressed intention, and we think the remaining expressed intention, viz: that at the death of Charles Duffield it should be conveyed to whomsoever should then be her right heirs should be carried out. Her heirs, except as to ancestral property, would be those of the whole blood. This property she got by purchase, and therefore it should go to the heirs of her sister Catharine, to the exclusion of the heirs of the half sister, Mary.

It was urged in argument that there were two contingencies that might have happened, viz:

*First*—That the marriage might not have been consummated; and second, that Charles Duffield might have died before Margaret; and that in either event, this fee could not have passed to the heirs of Margaret, since the living have no heirs. We think it might be a sufficient answer to these objections to say that these contingencies did not happen, and that the contingencies which were clearly provided for having happened that effect should be given to them. As to the first contingency we are

of the opinion that the terms of the deed in any event were not to take effect unless the marriage took place, and the fee would have remained in Margaret. As to the other contingency, that Charles Duffield should die before Margaret, it is not free from doubt; but we are of the opinion that she would have enjoyed the life estate with remainder to her heirs. Our construction of this deed differs from that given it by two able judges of our common pleas and the superior courts, but after as thorough an examination as we are able to give them, we are clearly of the opinion that their construction is not correct. A decree will be granted, giving the estate to the heirs of Catharine.

*Ramsey, Maxwell & Ramsey*, for Plaintiff in Error, Mary Roop.

*Thompson, Richards & Richards*, for Plaintiff in Error, Heirs of Charles Duffield.

*Thomas McDougall* and *Alfred C. Cassatt*, for Defendants in Error.