Margaret D'W. Mudge *vs.* Mary Hammill.

PROVIDENCE—MAY 5, 1899.

Present : Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Rule in Shelly's Case.*

To create an estate tail under the rule in Shelly's Case, it is essential that the limitations to the heirs of the body should be to the heirs of the body of the ancestor who takes the particular estate and to the heirs of the body of that ancestor alone. It is not enough that the limitation should be to the heirs of the person having the particular estate and of another who might have a common heir of their bodies. In the latter case the limitation over after the life estate is held to be a remainder, and the heirs take as purchasers *per formam doni* and not by descent.

(2) *Contingent Remainders. Executory Agreements.*

A contingent remainder is not an estate in land, but only a naked possibility ; therefore a deed purporting to convey not only the interest that the grantor has at law or equity, but also all of his interest upon the happening of the contingency, while inoperative at law as a conveyance, is good in equity as an executory agreement, and capable of enforcement according to its intent, when the maker by the happening of the contingency is in a position to give it effect. Further, a mortgage given by the grantee of the above-described interest, while still a possibility, is good as an assignment of his right under said deed viewed as an executory agreement.

(3) *Title by Estoppel.*

*Quære*, whether in a quitclaim deed conveying such interest, a covenant of warranty to the grantee, his heirs and assigns, against the demands of all persons claiming under the grantor, is a covenant running with the land, of which the mortgagee can avail himself by way of estoppel.

Bill in Equity to remove cloud from title. Heard on bill and answer. Bill dismissed.

Matteson, C. J. The purpose of the bill is to obtain the cancellation of a mortgage alleged to be a cloud on the complainant's title to real estate. The case arises as follows : On December 3, 1851, Francis LeBaron D'Wolf, the complainant's father, was seized and possessed in fee of a certain tract of land situated on Papoosesquaw Neck in Bristol, and on that date conveyed it to William Bradford D'Wolf of Bristol by an indenture with *habendum* as follows :

"To have and To Hold the said granted premises to him the said William B. D'Wolf, and to his heirs and assigns, but nevertheless that the said William B. D'Wolf, his heirs and assigns, shall hold the same upon the Trusts and stand seized of the same to the uses hereafter declared and appointed by said Francis, that is to say:

To the use of my present wife, Eliza W. D'Wolf, during her natural life, without impeachment of waste, and from and after her decease to the use of the heirs of the bodies of the said Francis and Eliza, between them two lawfully begotten, their heirs and assigns forever, free from said trusts.

And for lack of issue living lawfully begotten of the said Francis and Eliza, upon the death of said Eliza, living the mother of said Francis: Then to the use of his said mother, Sophie C. D'Wolf, her heirs and assigns forever, free from said trusts.

And for lack of issue lawfully begotten of said Francis and Eliza, living at the death of said Eliza, and in case also of the death of the said Sophie, living the said Eliza; then to the use of the heirs at law of said Francis forever, free from said trusts."

Francis LeBaron D'Wolf died June 4, 1861, leaving his widow Eliza W. D'Wolf him surviving, and two children by him begotten of the body of Eliza, viz., the complainant and her brother, Prescott Hall D'Wolf, sometimes called Francis Prescott D'Wolf. Sophie C. D'Wolf, the mother of Francis LeBaron D'Wolf, died December 10, 1879. On November 24, 1880, Eliza W. D'Wolf conveyed certain other property to the complainant, and thereupon the complainant, by deed of the same date, conveyed the estate to which this suit relates to her brother, Prescott Hall D'Wolf. In and by this deed the complainant, after reciting the indenture of December 3, 1851, and the conveyance from her mother referred to, in consideration of the premises and one dollar paid by her brother, Prescott Hall D'Wolf, quitclaims to him all the right, title, interest, property, claim and demand which she then had, or of right ought to have or claim, at law or in equity, now or after the decease of their mother, Eliza W.

D'Wolf, in and to the estate conveyed in and by the afore-
said deed of trust, bounded and described, &c., with *haben-
dum* to the said Prescott, his heirs and assigns forever, and
a covenant of special warranty to him and them against
the lawful claims and demands of all persons claiming by,
through, or under her.    Prescott Hall D'Wolf, by his deed
dated March 1, 1883, mortgaged the estate to the respondent
Mary Hammill, to secure the payment of a note for $3,000.
This mortgage contains the ordinary covenants of seizin,
right to convey and general warranty, and is executed and
acknowledged in the usual form.    Prescott Hall D'Wolf, the
mortgagor, died December 30, 1884, without issue.    Eliza
W. D'Wolf died June 4, 1897, to which time she remained
seized and possessed of the property under the indenture of
December 3, 1851, and leaving the complainant as the only
surviving heir of the bodies of the said Francis and Eliza.

The respondent Mary Hammill has held and still holds the
mortgage referred to, no part of the debt secured by which,
principal or interest, has been paid, and intends to foreclose
the mortgage unless the debt is paid.

The question has been raised whether the effect of the in-
denture of December 3, 1851, was to create an estate tail
special in Eliza W. D'Wolf, or merely an estate for life with
remainders to the heirs of the bodies of Francis LeBaron
D'Wolf and herself.    We think its effect was to create
merely a life estate in Eliza, with remainders to the heirs of
the bodies of Francis and Eliza.    To create an estate tail,
under the rule in Shelly's Case, it is essential that the limita-
tion to the heirs of the body should be to the heirs of the
body of the ancestor who takes the particular estate, and to
the heirs of the body of that ancestor alone.    It is not enough
that the limitation should be to the heirs of the person hav-
ing the particular estate and of another who might have a
common heir of their bodies.    Hence where the estate is
limited to the wife for life, remainder to the heirs of the bodies
of husband and wife, the freehold being in the wife alone, as
is the case in the present instance, the limitation over is held
to be a remainder, and the heirs take as purchasers *per for-*

*mam doni*, and not by descent. *Gossage* v. *Tayler*, Style,
325 ; *Frogmorton* v. *Wharrey*, 3 Wils. 125, 144 ; *s. c.* 2 W.
Blk. 728 ; *Dawson* v. *Quinnerly*, 118 N. C. 188 ; 3 Jar. Wills,
5 Am. Ed. *p. 341 ; 2 Wash. Real Prop. *p. 270. In the
view, however, of the case which we have taken, we do not
deem this question material.

Inasmuch as it could not be known who would answer the
description of the heirs of the bodies of Francis and Eliza
until the death of Eliza, or whether, indeed, there would be
any persons at all answering that description, we think the
remainders are to be regarded as contingent. Prescott Hall
D'Wolf having died during the life of his mother Eliza, and
his interest by virtue of the remainder having been contin-
gent on his surviving his mother, our opinion is that he took
no interest in the land under the remainder created by the
indenture. *Rhode Island Hospital Trust Co.* v. *Harris*,
20 R. I. 408.

(2)    The deed of the complainant to her brother, Prescott Hall
D'Wolf, of November 24, 1880, purported to convey to him,
his heirs and assigns, not only the right, title, interest, prop-
erty, claim and demand which she then had, or of right ought
to have and claim, at law or in equity, but also all her right,
title, interest, claim and demand after the decease of their
mother. Though this deed was inoperative at law as a con-
veyance, because made while its maker had no estate in the
land but only a naked possibility, we think it was neverthe-
less good in equity as an executory agreement and that it is
capable of enforcement according to its intent, now that the
maker, by the death of her mother, is in a position to give it
effect. *Bailey* v. *Hoppin*, 12 R. I. 560, 568 ; *Wilcox* v.
*Daniels*, 15 R. I. 261, 263, 266 ; *R. I. Hospital Trust Co.* v.
*Harris*, 20 R. I. 408. We think, too, that the mortgage of
Prescott Hall D'Wolf to the respondent, of March 1, 1883,
though invalid as a conveyance for the reasons stated, was
good as an assignment of his right under the deed to him
from the complainant, viewed as an executory agreement.

(3)    The question has been argued at considerable length
whether the covenant of special warranty contained in

the deed from the complainant to Prescott Hall D'Wolf amounted merely to a covenant in gross, enforceable against the complainant by Prescott Hall D'Wolf only, or a covenant running with the land, and so one of which the defendant could avail herself by way of estoppel against the complainant. But inasmuch as, in our opinion, the deed is enforceable as an executory agreement, without regard to the covenant (*Wilcox* v. *Daniels*, 15 R. I. 264), we have not deemed it necessary to decide the question.

We do not think that the bill makes a case for relief.

*Samuel Norris, Jr.*, for complainant.

*James, Wm. R.*, and *Theodore F. Tillinghast*, for respondent.

*Wilson & Jenckes*, for Louisa Knight.

*McGuinness & Doran*, for Hanley, Hoye & Co.