ÆTNA LIFE INS. CO. v. HOPPIN et al.

(Circuit Court of Appeals, Seventh Circuit. January 12, 1914. Rehearing Denied May 12, 1914.)

No. 2023.

1. DESCENT AND DISTRIBUTION (§ 6*)—COMMON LAW—PRIMOGENITURE—CONDITIONAL FEE—FEE TAIL.

Since 1819 descent to surviving children and descendants in equal parts has been substituted for the English rule of primogeniture; the descendants of a deceased child taking the child's share in equal parts, as provided by Jones & A. Ann. St. Ill. 1913, par. 4202.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 28–32; Dec. Dig. § 6.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ESTATES TAIL (§ 2*)—CONDITIONAL FEE—FEE TAIL.

The statute de donis, a part of the English law adopted by Illinois, by which a conditional fee was converted into a fee tail, has been barred since 1827 from taking effect, and what would be a fee tail under the English law has been changed into a life estate in the donee, with remainder in fee to the next taker, as provided by Jones & A. Ann. St. Ill. 1913, par. 2237.

[Ed. Note.—For other cases, see Estates Tail, Cent. Dig. § 2; Dec. Dig. § 2.*]

3. DEEDS (§ 129*)—ESTATE CONVEYED—HEIRS.

Where land is conveyed to A. and his heirs, or the heirs of his body, the word "heirs" is descriptive of the quality of the estate given to A., and in the absence of a contrary definition, clearly furnished by the donor, must be construed as intending an unending line of succession by inheritance, so that, though A. has a fee simple or fee tail, his capacity to enjoy the estate, if not alienated, is coterminous with his life.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 351, 360–365, 416–430, 434, 435; Dec. Dig. § 129.*]

4. DEEDS (§ 128*)—"HEIRS"—RULE IN SHELLEY'S CASE.

In Illinois, and in the United States generally, where the surviving children as tenants in common stand for the surviving eldest son, the word "heirs" may have different meanings, just as under the English law the singular form, "heir," might have different meanings, but, if there is no context, the word "heirs" must be held to indicate the indefinite succession by inheritance, and the rule in Shelley's Case applies; but a context may demonstrate that the word was used as a description of purchasers who would constitute a new stock of descent.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 413–415, 419–421, 427; Dec. Dig. § 128.*

For other definitions, see Words and Phrases, vol. 4, pp. 3241–3265; vol. 8, pp. 7677, 7678.]

5. DEEDS (§ 133*)—"VESTED REMAINDER"—"CONTINGENT REMAINDER."

A remainder is vested when throughout its existence it stands ready to take effect in possession whenever and however the preceding estate determines, and is contingent when it is limited on an event which may happen before or after or at the time of or after the termination of the particular estate.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 368–371; Dec. Dig. § 133.*

For other definitions, see Words and Phrases, vol. 8, pp. 7305–7307, 7827–7829; vol. 2, pp. 1503–1506; vol. 8, p. 7615.]

6. DEEDS (§ 133*)—VESTED AND CONTINGENT REMAINDER—HEIRS OF BODY—CHILDREN.

A deed conveyed property to H. and to S., his wife, during their natural life and the life of the survivor, and at the time of the death of the survivor to the heirs of the body of S., their heirs and assigns. *Held,* that the remainder given to the heirs of the body of S. was not vested, because it did not stand ready throughout its existence to take effect in possession whenever and however the preceding estate determined. The words "heirs of the body," being intended to have their ordinary legal meaning, were not synonymous with "children"; and since the remainder to such heirs was contingent, an execution sale of the property under a judgment against them during the continuance of the life estate passed no title.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 368–371; Dec. Dig. § 133.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. CONSTITUTIONAL LAW (§ 93*)—VESTED RIGHTS—ESTATE CONVEYED—SUB-
      SEQUENT LEGISLATION—RULES OF DECISION.
        Where a deed, at the time it was executed, conferred on the heirs of
      the grantees a contingent remainder in fee simple under the law then in
      force, the right could not be impaired or destroyed by subsequent legisla-
      tion or subsequent decisions.
        [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 176,
      177, 181–185, 190–192, 194–200, 208, 213–224, 236; Dec. Dig. § 93.*]

In Error to the District Court of the United States for the South-
ern Division of the Southern District of Illinois; J. Otis Humphrey,
Judge.

Ejectment by the Ætna Life Insurance Company against Franklin
M. Hoppin and others. Judgment for defendants, and plaintiff brings
error. Affirmed.

William Jack, of Peoria, Ill., for plaintiff in error.
Albert M. Kales, of Chicago, Ill., for defendants in error.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

BAKER, Circuit Judge. Plaintiff in error was plaintiff in this ac-
tion of ejectment. The cause was submitted to the court, without a
jury, on an agreed statement of facts. Judgment was for defendants.

In 1862 Fassett, owner in fee of land in Illinois, deeded it to "Frank-
lin Hoppin and Sarah Hoppin, his wife, during their natural lives
and the life of the survivor of them, and at the death of the survivor
to the heirs of the body of said Sarah, their heirs and assigns."

Franklin died in 1865; Sarah, in 1908. In 1862, when the Fassett
deed was made, defendants Hoppin and Garland, son and daughter
of Franklin and Sarah, were in being; and they were the only chil-
dren ever born to Sarah. Defendant Vangieson is tenant of his co-
defendants.

Plaintiff claims title under an execution sale on a judgment against
defendants Hoppin and Garland. Judgment was rendered in 1874;
execution was levied and sale was had in 1875; and deed thereon
was made in 1877.

[1, 2] Ever since territorial days there has been a provision in Ill-
inois (Ill. St. An. c. 28, § 1) that the common law of England and
the general acts of Parliament in aid thereof, prior to 1606, shall be
in force until repealed by legislative authority. Since 1819 for descent
by primogeniture has been substituted descent to surviving children
and descendants in equal parts, descendants of a deceased child tak-
ing the child's share in equal parts. Ill. St. An. c. 39, § 1. The stat-
ute de donis (a part of the English law adopted by Illinois), by which
a conditional fee was converted into a fee tail, has been barred since
1827 from taking effect, and what would be a fee tail under the Eng-
lish law has been changed to a life estate in the donee and a remainder
in fee simple to the next taker. Ill. St. An. c. 30, § 6.

If by the Fassett deed "the heirs of the body of Sarah" took a
contingent remainder, plaintiff does not deny that the execution sale

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was ineffective to pass any interest in the land. Baker v. Copenbarger, 15 Ill. 103, 58 Am. Dec. 600; Haward v. Peavey, 128 Ill. 430, 21 N. E. 503, 15 Am. St. Rep. 120; Ducker v. Burnham, 146 Ill. 9, 34 N. E. 558, 37 Am. St. Rep. 135; Hull v. Ensinger, 257 Ill. 160, 100 N. E. 513.

So the question is: What estate or estates were created by the Fassett deed in 1862 under the common law as modified in the two particulars named?

Ætna Life Ins. Co. v. Hoppin, 249 Ill. 406, 94 N. E. 669, is an exact precedent. That was an ejectment case between these parties, involving the same Fassett deed and the same execution sale. Plaintiff prevailed in the trial court. On appeal the judgment was reversed and the cause remanded for retrial. Thereupon plaintiff dismissed, and on appeal its right to do so was upheld. 255 Ill. 115, 99 N. E. 375. Though the decision has no force as an adjudication, it is, what cited authorities rarely are, a case squarely in point on the very language presented to us for construction. Exercising an undoubted right, plaintiff asks us to say whether that case was correctly decided.

[3] Shelley's Case has no application, and therefore section 6 of chapter 30 is to be disregarded. In a deed to A. and his heirs, or heirs of his body, the word "heirs" is descriptive of the quality of estate given to A. "Heirs," in the absence of a contrary definition clearly furnished by the donor, intends an unending line of succession by inheritance. Though A. has a fee simple or fee tail, his capacity to enjoy the estate, if not alienated, is coterminous with his life. So, when a conveyance to A. for his use during life and then to his heirs or heirs of his body came up for construction, it was held in Shelley's Case that the word "heirs" was a word of limitation, descriptive of A.'s estate, and not a word of purchase, descriptive of grantees·in remainder; that the donor either actually intended A. to have an estate in fee, or, if his intent was that A. should take only a life estate, his failure to supply a new lexicography for "heirs" left his wish as one impossible of gratification, namely, that the law should not be enforced. In the present deed, however, the context displays the sense in which the grantor used the words "heirs of the body of Sarah." The context is "Sarah for life, then the heirs of her body, their heirs and assigns." He did not intend that Sarah should have a fee simple, for there is no limitation to her general heirs in unending succession. He did not intend that she should have a fee tail, for the words of limitation are not restricted merely to the stream of her blood so long as it shall continue. He intended, what he plainly said, that Sarah should have only a life estate; and since, therefore, the heirs of the body of Sarah were not to take from her by descent, he intended that they should take by purchase; and since the description of the purchasers is followed by the words of limitation "their heirs and assigns," he intended that those purchasers should take the remainder in fee simple. Such we believe is the natural reading of the deed, and such an interpretation is likewise required by the rule in Archer's Case, 1 Co. 66b, decided in 1597, when read with primogeniture in mind.

There the devise was to Robert Archer for life, and "afterwards
to the next heir male of Robert, and to the heirs male of the body
of such next heir male." If the devise had been to Robert for life,
and then to his next heir male, the word "heir" could have been con-
strued in a collective sense to denote an indefinite succession through
Robert's blood in the male line, and so under Shelley's Case an es-
tate in fee tail would have been created. But the added words, "and
to the heirs male of the body of such next heir male," required atten-
tion to be given to the facts that the drafter of the instrument was
using the plural form "heirs" when he intended an indefinite succes-
sion by inheritance; that the indefinite succession was to spring, not
from Robert, but from the next heir male of Robert; and that the
singular form, "next heir male of Robert," therefore, could not prop-
erly be taken as nomen collectivum, but was a description of that
person who by primogeniture could at Robert's death answer as his
next heir male. Consequently the holding was that the next heir male
of Robert took by purchase and constituted a new stock of descent.
Robert's next heir male became the first holder of a fee tail. If the
added words of limitation had been to the general heirs of such next
heir male, so that the next heir male as purchaser would have ac-
quired a fee simple, as is the wording here, there would have been
even less room for contending that Robert Archer was given a fee
tail.

· [4] Under the English law of primogeniture no ancestor could
leave surviving him more than one heir. If he left sons, the eldest
was his heir. If daughters only, they took as one heir as coparceners.
So a deed to A. for life and then to the *heir* of his body might have
different meanings. If there was no context, it was considered that
the singular form was used collectively to indicate indefinite succes-
sion, and Shelley's Case applied. But a context might show that the
singular form was employed to describe the person who by survival
would become the heir of A.'s body, and that such heir should con-
stitute a new stock of descent. But a deed to A. for life and then
to the *heirs* of his body contained no ambiguity under English law.
"Heirs" could not be taken as descriptive of the one person; it could
only mean the indefinite succession from generation to generation.
Therefore, in a deed to A. for life and then to the heirs of his body,
*their heirs and assigns,* the added words were ineffectual to obviate
the rule in Shelley's Case. "Heirs of the body," being usable only to
create an estate in tail, could not be descriptive of coexistent persons
who on the death of the donee for life could then answer as the heirs
of his body, and whose estate would be defined by the added words
"their heirs and assigns" as a remainder in fee simple. The applica-
tion of the rule in Shelley's Case to this last supposed deed (Wright
v. Pearson, 1 Ed. 119, Measure v. Gee, 5 B. & Ald. 910) is entirely
consistent with the rule in Archer's Case where primogeniture pre-
vails. Bayley v. Morris, 4 Ves. Jr. 788; Evans v. Evans [1892] 2 Ch.
173. But in Illinois, and in this country generally, where the surviv-
ing children as tenants in common stand for the surviving eldest son,
"heirs" may have different meanings, just as under English law the

singular form "heir" might have different meanings. If there is no context, "heirs" must be held to indicate the indefinite succession by inheritance, and Shelley's Case applies. But a context may demonstrate that "heirs" was a description of purchasers who should constitute a new stock of descent. Ætna Life Ins. Co. v. Hoppin, 249 Ill. 406, 94 N. E. 669, where Archer's Case was relied on.. And see, also, De Vaughn v. Hutchinson, 165 U. S. 566, 17 Sup. Ct. 461, 41 L. Ed. 827; De Vaughn v. De Vaughn, 3 App. D. C. 50; Daniel v. Whartenby, 17 Wall. 639, 21 L. Ed. 661; Dott v. Willson, 1 Bay (S. C.) 457; Lemacks v. Glover, 1 Rich. Eq. (S. C.) 141; McIntyre v. McIntyre, 16 S. C. 290; Jarvis v. Wyatt, 11 N. C. 227; Tucker v. Adams, 14 Ga. 548; Taylor v. Cleary, 29 Grat. (Va.) 448; Peer v. Hennion, 77 N. J. Law, 693, 76 Atl. 1084, 29 L. R. A. (N. S.) 945; Earnhart v. Earnhart, 127 Ind. 397, 26 N. E. 895, 22 Am. St. Rep. 652; Wescott v. Meeker, 144 Iowa, 311, 122 N. W. 964, 29 L. R. A. (N. S.) 947; Archer v. Brockschmidt, 5 Ohio N. P. 349; Hamilton v. Wentworth, 58 Me. 101; Canedy v. Haskins, 54 Mass. (13 Metc.) 389, 6 Am. Dec. 739; Findlay v. Riddle, 3 Bin. (Pa.) 139, 5 Am. Dec. 355.

[5] Did the purchasers who were described as the "heirs of the body of Sarah" take a vested or a contingent remainder?

A remainder is vested when throughout its existence it stands ready to take effect in possession whenever and however the preceding estate determines. A remainder is contingent when it is limited on an event which may happen before or after, or at the time of or after the termination of the particular estate. Williams, Real Prop. (21st Ed.) 356–358; Gray, Rule against Perp. § 134; Williams, Real Prop. (21st Ed.) 345; Gray, Rule against Perpetuities, § 101; Fearne, C. R. p. 3; Butler's Note to Fearne, C. R. p. 9; Challis, Real Prop. (3d Ed.) pp. 125–126; Leake, Digest of Land Law (2d Ed.) p. 233; Archer's Case, 1 Co. 66b; Bayley v. Morris, 4 Ves. Jr. 788; Plunket v. Holmes, 1 Lev. 11; Loddington v. Kime, 1 Salk. 224; Purefoy v. Rogers, 2 Saund. 380; Egerton v. Massey, 3 C. B. N. S. 338; Festing v. Allen, 12 M. & W. 279; Rhodes v. Whitehead, 2 Dr. & Sm. 532; White v. Summers, (1908) 2 Ch. 256; Doe v. Scudamore, 2 B. & P. 289; Price v. Hall, L. R. 5 Eq. 399; Cunliffe v. Brancker, 3 Ch. Div. 393; City of Peoria v. Darst, 101 Ill. 609; Haward v. Peavey, 128 Ill. 430, 21 N. E. 503, 15 Am. St. Rep. 120; Walton v. Follansbee, 131 Ill. 147, 23 N. E. 332; Mittel v. Karl, 133 Ill. 65, 24 N. E. 553, 8 L. R. A. 655; Temple v. Scott, 143 Ill. 290, 32 N. E. 366; Chapin v. Crow, 147 Ill. 219, 35 N. E. 536, 37 Am. St. Rep. 213; McCampbell v. Mason, 151 Ill. 500, 38 N. E. 672; Phayer v. Kennedy, 169 Ill. 360, 48 N. E. 828; Madison v. Larmon, 170 Ill. 65, 48 N. E. 556, 62 Am. St. Rep. 356; Golladay v. Knock, 235 Ill. 412, 85 N. E. 649, 126 Am. St. Rep. 224; Bond v. Moore, 236 Ill. 576, 86 N. E. 386, 19 L. R. A. (N. S.) 540; Ætna Life Ins. Co. v. Hoppin, 249 Ill. 406, 94 N. E. 669; Irvine v. Newlin, 63 Miss. 192; Bennett v. Morris, 5 Rawle (Pa.) 9; Stump v. Findlay, 2 Rawle (Pa.) 168, 19 Am. Dec. 632; Waddell v. Rattew, 5 Rawle (Pa.) 230; Redfern v. Middleton, Rice (S. C.) 459; Craig v. Warner, 5 Mackey (16 D. C.) 460, 60 Am. Rep.

381; McElwee v. Wheeler, 10 S. C. (Rich.) 392; Fabler v. Police, 10 S. C. (Rich.) 376; Watson v. Dodd, 68 N. C. 528; Watson v. Dodd, 72 N. C. 240; Abbott v. Jenkins, 10 Serg. & R. (Pa.) 296; Taylor v. Taylor, 118 Iowa, 407, 92 N. W. 71; Young v. Young, 89 Va. 675, 17 S. E. 470, 23 L. R. A. 642; Nichols v. Guthrie, 109 Tenn. 535, 73 S. W. 107; Henderson v. Hill, 77 Tenn. (9 Lea) 26; Round-tree v. Roundtree, 26 S. C. 450, 471, 2 S. E. 474; Blanchard v. Brooks, 12 Pick. (Mass.) 47.

[6] The remainder given to the "heirs of the body of Sarah" is not vested, because it does not stand ready throughout its existence to take effect in possession whenever and however the preceding estate determines. If before Sarah's death the life estate should terminate by forfeiture or merger or surrender, the remainder would not stand ready, according to its terms, to come into possession. The remainder is contingent, because it is limited on an event (the death of Sarah, when the heirs of her body can be ascertained) which may not happen until after the termination of the life estate, while it may be coincident with the termination of the life estate.

There is no escape from holding that the remainder is contingent, except by construing "heirs of the body of Sarah" as meaning her children living at the date of the deed and those subsequently born, instead of denoting such children and descendants as should survive her. But in our judgment this cannot be done. When it is found that Shelley's Case does not apply, and that the words "heirs of the body" are descriptio personarum of remaindermen who are given an estate in fee simple, the question whether the remainder, which is inevitably contingent according to the legal definition and the maxim that no one can be heir of the living, can be treated as a vested remainder in children alive or as born, must be determined by observing whether or not a definition contrary to the legal one has been furnished by the donor. In Archer's Case no extralegal definition was supplied, and the remainder was held to be, not a remainder that vested in Robert's eldest son when born, but a remainder that was contingent upon a person's surviving Robert who could then answer to the legal description. When the parties to the present controversy were before the Supreme Court of Illinois, that tribunal, after finding that Shelley's Case was inapplicable, ruled that:

"There is no ground whatever in this case for saying that the words 'heirs of the body' were intended to have any other than their ordinary definite legal meaning, for there are no words in the deed which in any way qualify them."

This accords with the general holdings that in the absence of a special context there is nothing to do but accept the legal definition. Bayley v. Morris, 4 Ves. Jr. 788; Canedy v. Haskins, 54 Mass. (13 Metc.) 389, 46 Am. Dec. 739; Hamilton v. Wentworth, 58 Me. 101; Frogmorton v. Wharrey, 2 Wm Black Rep. 728; Mudge v. Hammill, 21 R. I. 283, 43 Atl. 544, 79 Am. St. Rep. 802; Harvey v. Ballard, 252 Ill. 57, 96 N. E. 558; Thurston v. Thurston, 6 R. I. 296, 300; Mercer v. Safe Deposit Co., 91 Md. 102, 117, 45 Atl. 865; Kirby v. Brownlee, 7 Ohio Cir. Dec. 460, 463; Hanna v. Hawes, 45 Iowa,

437, 440; Zuver v. Lyons, 40 Iowa, 513; Crosby v. Davis, 2 Clark (Pa.) 403; Wood v. Burnham, 6 Paige (N. Y.) 513; Tallman v. Wood, 26 Wend. (N. Y.) 9; Jarvis v. Wyatt, 11 N. C. 227; Lemacks v. Glover, 1 Rich. Eq. (S. C.) 141; Tucker v. Adams, 14 Ga. 548; Sharman v. Jackson, 30 Ga. 224; Smith v. Butcher, L. R. 10 Ch. Div. 113; Lord v. Comstock, 240 Ill. 492, 88 N. E. 1012; Jones v. Rees, 6 Pennewill (Del.) 504, 69 Atl. 785, 16 L. R. A. (N. S.) 734; Johnson v. Jacobs, 74 Ky. (11 Bush) 646; Hall v. La France Fire Engine Co., 158 N. Y. 570, 53 N. E. 513; Putnam v. Gleason, 99 Mass. 454; Richardson v. Wheatland, 48 Mass. (7 Metc.) 169; Read v. Fogg, 60 Me. 479; Williamson v. Williamson, 57 Ky. (18 B. Mon.) 329; Fulton v. Harmon, 44 Md. 251, 264; Horsley v. Hilburn, 44 Ark. 458; In re Estate of Kelso, 69 Vt. 272, 37 Atl. 747; In re Wells' Estate, 69 Vt. 388, 38 Atl. 83; Hall v. Leonard, 1 Pick. (Mass.) 27; Morris v. Stephens, 46 Pa. 200; Winslow v. Winslow, 52 Ind. 8.

In the cases cited by plaintiff to support the contention that "heirs of the body" should be construed to mean "children alive or as born" there was either a special context or when the question of rights arose the "children" were in fact survivors answering to the description of heirs of the body. Doe v. Laming, 2 Burr. 1100; Doe v. Graff, 11 East, 668; Gretton v. Haward, 6 Taunt. 94; Crump v. Norwood, 7 Taunt. 362; Right v. Creber, 5 B. & C. 866; De Vaughn v. Hutchinson, 165 U. S. 566, 17 Sup. Ct. 461, 41 L. Ed. 827.

We therefore conclude that the Supreme Court of Illinois, when considering the deed now in question, correctly determined and applied the Illinois law as it stood in 1862; that is, the common law of England and the general acts of Parliament in aid thereof, prior to 1606, as modified by the Illinois statute of descent.

Plaintiff, citing no Illinois cases prior to 1862, insists that the Illinois decision between these parties is opposed to Butler v. Huestis, 68 Ill. 594, 18 Am. Rep. 589, decided in 1873, and has been virtually overruled by Moore v. Reddel, 259 Ill. 36, 102 N. E. 257, decided in June, 1913.

[7] Though there were no apposite Illinois decisions before 1862, the law of Illinois, a common-law state, is to be regarded as settled in 1862 in accordance with the settled common law. Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428. If this Fassett deed in 1862 conferred upon defendants a contingent remainder in fee simple under the law then in force, that right in real estate could not be impaired or destroyed by subsequent legislation or subsequent decision.

Moore v. Reddel, if it does conflict with Ætna Life Ins. Co. v. Hoppin, can be allowed no effect. On this writ the question is whether the trial court committed error in looking to the evidences of the Illinois law in force in 1862. Error cannot be predicated on the trial court's failure to foresee that the Supreme Court of Illinois would not merely overturn a rule of property as declared shortly before by the same judges, but would undertake to abrogate the common law—a right reserved by chapter 28, § 1, exclusively to the Legislature. Morgan v. Curtenius, 20 How. 1, 51 L. Ed. 823; Burgess

v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359; Security Trust Co. v. Black River National Bank, 187 U. S. 211, 23 Sup. Ct. 52, 47 L. Ed. 147; Western Union Tel. Co. v. Poe (C. C.) 64 Fed. 9; King v. Dundee (C. C.) 28 Fed. 33.

This case is at an end, but it may perhaps be not unfitting to say that we believe plaintiff is mistaken in asserting a conflict between the cases named. In Butler v. Huestis, in Moore v. Reddel, and in the additional case of Winchell v. Winchell, 259 Ill. 471, 102 N. E. 823, the foundational finding was that a fee tail was created, on which section 6 of chapter 30 would operate. "As to limitations controlled by that section, the only use made of the rule [in Shelley's Case] is for the purpose of determining whether by the common law a fee tail would have been created." Winchell v. Winchell, supra. Construction of section 6 of chapter 30 was within the province of the Supreme Court of Illinois; and if, in interpreting the legislative will in abrogating the common law respecting entails, the court found that "heirs of the body" of the first taker was intended by the Legislature to mean "children alive or as born," such statutory construction throws no light on the meaning of "heirs of the body" at common law in an instrument where the rule in Shelley's Case fails to bring section 6 into play. This substantially was stated in Ætna Life Ins. Co. v. Hoppin. The court there recited the settled construction of section 6, citing the cases cited in Moore v. Reddel, and then proceeded to say that:

"These cases are not decisive of this case, which does not involve the application of the statute, but is merely a question of the construction of the conveyance without reference to any statute."

And the correctness of the position taken in Ætna Life Ins. Co. v. Hoppin with respect to the scope and meaning of section 6 was recognized in Moore v. Reddel. We perceive no conflict between the two lines of decisions, and we believe none was intended.

The judgment is affirmed.