FANNIE LIPPINCOTT ET AL., PLAINTIFFS IN ERROR, v. SARAH E. DAVIS, DEFENDANT IN ERROR.*

1. The rule in Shelley's case is applicable, without regard to the intention of the testator, whenever the situation is created that is pertinent to it.
2. The tenth section of the statute of descents has not abolished the rule in Shelley's case in all cases, but only so far as it relates to the lineal heirs of the first taker.
3. When a will devised all the land of which testator was seized, situate in a certain township, and in a subsequent clause it plainly appeared that it was not the intention to embrace in such devise a certain tract— *Held,* that the latter exceptive clause controls the former clause.

On error.

Action of ejectment tried in the Burlington Circuit, before Justice Garrison, without a jury. The plaintiff below, Mrs. Davis, recovered the undivided half part of the premises.

The question of title depended on the legal effect of the will of Thomas Gaskill and that of his son, Job H. Gaskill.

The former will, dated January 31st, 1841, disposed of the lands in dispute in the following terms, viz. :

"*Item.* I give and bequeath to my son, Job Gaskill, my farm, of late occupied by him, situate in the township of Northampton, in the county of Burlington, with all things properly belonging thereto, during his natural life, and afterward to descend unencumbered to his lawful heirs, subject, however, to the payment of $3,000 to his brother, Israel Gaskill, as hereinafter devised.

"*Item.* I give and bequeath to my son, Israel Gaskill, $3,000, to be paid to him or his legal representatives by my son, Job Gaskill, or out of the farm devised to him."

Job Gaskill paid the $3,000 to Israel Gaskill, and entered into possession of the farm as devisee.

Job died in 1886, unmarried and childless, leaving a will

---

* Owing to an application made for a rehearing, this case was not printed with the opinions of the term at which it was argued.—REP.

containing the following clauses, both of which embrace and relate to the land in question :

"*Item 2.* I do give and devise unto my adopted son, Job H. Meirs Gaskill, son of my nephew, John G. Meirs, all the real estate of which I may be seized at the time of my decease, situate in the township of Pemberton (except only a lot of about four acres of land, on the South Pemberton road, near the old Baptist church graveyard, which I have set apart and had enclosed for a cemetery), to him, his heirs and assigns.

"I also give and devise unto my said adopted son, Job H. Meirs Gaskill, all my cedar swamp and other outlands, in the township of Woodland, in said county of Burlington, of which I may be seized at the time of my decease, to him, his heirs and assigns.

"*Item 12.* Whereas, my father, Thomas Gaskill, in and by his last will and testament, did give and devise unto me, during my natural life, and after my death to my heirs-at-law, a farm containing about two hundred and sixty acres, situate on the South Pemberton road, in the township of Pemberton, adjoining lands of M. S. Butterworth, Benjamin Haines and others; now I do authorize and empower my executor, hereinafter named, to purchase said farm of my heirs or heirs-at-law, provided he can purchase the same upon terms satisfactory to himself, and to receive a good and sufficient deed therefor, to my said adopted son, Job H. Meirs Gaskill, and to pay for the same out of my estate."

For the plaintiffs in error, *Grey & Grey.*

For the defendant in error, *Mark R. Sooy* and *Barker Gummere.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an action of ejectment, brought by Sarah E. Davis, the defendant in error, for the half of a tract of land situated in the township of Pemberton, in the county of Burlington. The title exhibited by her was

that the premises in question had been the property of one Job H. Gaskill, who, at his death, had been seized in fee, and who, as to them, had died intestate, and that she was one of his two heirs-at-law, and as such was entitled to the one moiety thereof.

To this assertion of title the plaintiffs in error counter-charged to the effect that the above-mentioned Job H. Gaskill did not die intestate as to these lands, but to the contrary had devised them to one Job H. Meirs Gaskill, under whom they hold as tenants.

In view of these contentions, it becomes necessary to examine and decide the two following questions, to wit, first, what estate Job H. Gaskill held in this property and whether he disposed of it under his will.

It is admitted that one Thomas Gaskill was the owner in fee, at the time of his death, of those premises, and that he devised them to his son, in the terms following, viz. :

"*Item.* I give and bequeath to my son, Job Gaskill, my farm, of late occupied by him, situate in the township of Northampton, in the county of Burlington, with all things properly belonging thereto, during his natural life, and afterwards to descend unencumbered to his lawful heirs, subject, however, to the payment of three thousand dollars to his brother, Israel Gaskill, as hereinafter devised."

On the part of the defendant in error it is contended that, by force of this clause, the Job H. Gaskill already mentioned, and who is designated Job Gaskill by the testator, became entitled only to an estate for life. The argument in favor of this view was rested on two grounds, the first of which was that this testamentary provision, construed according to the rules of the common law, and altogether irrespectively of statutory modification, does not create a larger interest. The contention was that it plainly appears from the direction that, upon the death of the life tenant, the lands should "descend unencumbered to his lawful heirs," that the testator did not mean that the first taker should be gifted with anything more than an estate for life. It was argued

that as he was prevented, in express terms, from encumbering
the property devised, a testamentary purpose of giving him
the fee is excluded. But this argument is founded in the
theory that, in such a case as the present, if the intention of
the testator can be plainly discovered, the court will be bound
to effectuate it. But this notion is opposed to all authority,
and, consequently, is destitute of all force. Tested solely by
the canons of the common law, the clause now under criticism
would be subject to the absolute control of the rule established
in Shelley's case. That rule, it will be remembered, is this :
" That where an estate of freehold is limited to a person and
the same instrument contains a limitation, either mediate or
immediate, to his heirs or the heirs of his body, the word
'heirs' is a word of limitation, *i. e.*, the ancestor takes the
whole estate comprised in this term. Thus, if the limitation
be to the heirs of the body, he takes a fee-tail ; if to his heirs
general, a fee-simple."

The rule thus stated, it is universally acknowledged, is one
of law and not of construction, and consequently the intention
of the testator, in its presence, is of no account whatever. If
the facts called for by the rule exist, the rule is to be inex-
orably applied. Given a freehold for life and a limitation in
the same instrument to the heirs of such tenant, it is believed
that no case can be found holding that a fee-simple, by force
of the rule in question, had not become vested in the first
taker. If the appropriate situation be presented, the applica-
tion of the rule is inevitable, so that Mr. Jarman is demon-
strably justified in his statement that " as no declaration, the
most positive and unequivocal, that the ancestor shall take
only, or his estate be subject to the incidents of, a life estate,
will exclude the rule, so a declaration that the heirs shall
take as purchasers is equally inoperative to have such effect."
2 *Jarm. Wills* 1185.

In view of the principles thus established, it is obvious
that the inference that the testator, by directing a descent of
the lands in an unencumbered condition, indicated that his
son was not to become seized of the fee, has no place what-

ever in the inquiry before the court.   In point of fact, the circumstance relied on in the present case as showing testator's intent existed, and was disregarded, in the great case of *Perrin* v. *Blake,* 1 *W. Bl.* 672, which finally settled the rule of law in question, for in that instance there was an express declaration in the will that the first taker should not dispose of his estate for longer than his life.

With regard to the cases cited in the brief of counsel on this head, it is proper to say that they are regarded as having no application to the facts before the court.   These authorities do not in the remotest degree tend to show that when the situation requisite to the application of the rule exists, such situation can be controlled by the intention of the testator. The conclusion of this court on this first branch of the case is that, in accordance with the rules of the common law, Job Gaskill, the son of the testator, would be entitled to an estate in fee in the lands thus devised to him.

In view of this result the complementary question supervenes, viz., does the statute of this state, in its application to this case, affect or alter this result?

The inquiry relates to the tenth section of the "Act relating to the descent of real estate." *Gen. Stat., p.* 1195.   This statutory clause has on several occasions been referred to incidentally as having the effect of repealing the rule of Shelley's case, and there can be no doubt that it performs that office within the sphere of its operation, but in the aspect in which it is now present it has never heretofore received judicial consideration.

This is the language of the section, viz. :

" That in case any lands, &c., shall hereafter be devised, &c., to any person for life, and at the death of the person to whom the same shall be so devised for life, to go to his or her heirs, or to his or her issue, or to the heirs of his or her body, then and in such case, after the death of such devisee for life, the said lands, &c., shall go to and be vested in the children of such devisee, equally to be divided between them as tenants in common in fee, but if there be only one child then to that one in fee, and, if any child be dead, the part which would

have come to him or her shall go to his or her issue in like manner."

In the case now in hand, the son of the testator, Job H. Gaskill, who is devisee for life, died unmarried, and consequently, as we construe this statute, it is not affected by the statutory regulation just recited. By its terms this clause provides for a single class of cases—that is, as between a parent and his issue. When the situation is thus conditioned, the ancestor takes an estate for life, and his issue a vested remainder in fee. The provision has no effect beyond this, for it does not indicate in the faintest degree that any other regulation than the common law rule is to obtain, except in the single instance where there are children, or the issue of children, in whom the remainder can vest. The policy of the act seems to be to favor the lineal heirs of the devisee for life, but it takes no heed of the interest of the collateral heirs. The language of the act upon this subject is deemed by us explicit and unambiguous, and consequently that there is no room for construction.

The result is that, in our opinion, these collateral heirs can make no claim to these premises under the will of Thomas Gaskill, either by force of the common law or of the statute just expounded.

From these conclusions it follows that Job H. Gaskill became the owner in fee of these lands, and the remaining inquiry is whether he disposed of them by his will or died intestate with respect to them.

By the second clause of his will, Job H. Gaskill devised to Job H. Meirs Gaskill all the real estate of which he might be seized at the time of his decease, situate in the township of Pemberton, &c., "to him, his heirs and assigns."

The premises in dispute are situated in the township of Pemberton, and as according to the construction which has been given by the court to his father's will, he was seized of such premises in fee at his death, it would have plainly passed under the clause of his will just recited if there had been nothing therein to counteract or modify the effect of that dis-

position. And, in fact, our conclusion is that, by the force of the twelfth item of that instrument, these premises are excepted out of the scope of the second testamentary clause above recited. The provision producing, in our opinion, this exceptive effect is in these terms, viz. :

" Whereas, my father, Thomas Gaskill, in and by his last will and testament, did give and devise to me during my natural life, and after my death to my heirs-at-law, a farm containing about two hundred and sixty acres, situate, &c., in the township of Pemberton, adjoining, &c. (being the premises now in dispute) ; now I do authorize and empower my executor hereinafter named to purchase said farm of my heirs or heirs-at-law, provided he can purchase the same upon terms satisfactory to himself, and to receive a good and sufficient deed therefor, to my adopted son, Job H. Meirs Gaskill, and to pay for the same out of my estate."

It is plain that these two clauses of this will are contradictory, for in the former of them he treats this property as his own, devising it to his adopted son, and in the latter he declares that such property belongs to his heirs, and directs his executor to acquire the title to it by purchase. Where two dispositions of a will are incurably repugnant, it is the latter of the two to which effect will be given. Thus, where a testator, after devising the whole of his estate to A, devises Blackacre to B, the latter devise will be read as an exception out of the first. *Cuthbert* v. *Lempriere,* 3 *Mau. & Sel.* 158. We think that the testator in the case before us did not intend to embrace this farm in the devise to his son, but intended it to be purchased from his heirs for the benefit of such devisee.

The result is that the farm in question has not been disposed of by the testator, and that as to it he died intestate. The title is in his heirs-at-law, of which the defendant in error is one. But in that capacity she does not seem to be entitled to a moiety of the property, but only, as it would seem, to a third part. But the question with respect to the number of heirs of this land has not been examined.

Let the judgment be reversed and a *venire de novo* issue, &c.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SMITH.    11.