JENNIE T. LAMPREY and C. PERCY LAMPREY, her husband,

v.

HENRY C. WHITEHEAD.

[Filed April 14th, 1903.]

1. Under a devise to which the provisions of section 10 of the Descent act (*Gen. Stat. p. 1193*) apply, while an estate in the lands devised vests in any child of the devisee for life, it is an estate which will be devested by the death of such child, leaving issue, during the life of the devisee for life.

2. A title made by a conveyance executed during the life of the devisee for life, from a child having a vested estate under the provisions of that section, being subject to be devested in the event of the death of such child leaving issue, during the life of the devisee for life, is not a marketable title which a purchaser ought to be compelled to take by a decree for specific performance.

---

*Mr. Thomas M. Moore,* for the complainants.

*Mr. Arthur S. Corbin* and *Mr. John R. Beam,* for the defendant.

MAGIE, CHANCELLOR.

The bill in this cause seeks a decree compelling the specific performance, by the defendant, of a contract in writing, made by him with the complainants, for the purchase of certain lands in the city of Passaic. By the terms of the contract complainants agreed to convey to the defendant the said lands in fee-simple, free from all encumbrance, except the right, if any, of any child born to one Evaline Brainerd (a former owner of the premises) after the date of the contract, and the defendant agreed to pay complainants, on delivery of the deed for said lands, the sum of $8,000. The complainants aver that they tendered to defendant a conveyance which would have vested in him a title to the lands in question in fee-simple, free from

any encumbrance, except that mentioned in the contract, and that the defendant refused to accept the same, or to pay the consideration which he had agreed to pay therefor.

The defendant, by his answer, admits the making of the contract, the tender of the conveyance to him, and his refusal to accept the same and pay the consideration. He asserts that he ought not to be compelled to accept a conveyance or to pay the consideration because the title which would have been vested in him by the conveyance is not one of a merchantable character. The precise point of his objection is that the title which he would thereby acquire is subject to be devested by the happening of a certain contingency.

The complainants, by their bill, set up their title to the premises thus: The lands were owned in fee-simple by Nathan Stevens, who died seized thereof in 1885, leaving a last will and testament, executed so as to pass the title to real estate, and bearing date July 1st, 1880. By the sixth section of that will he devised to his daughter, Evaline Brainerd,

"for and during her natural life, * * * two vacant lots of land * * * in the city of Passaic, in the state of New Jersey, and upon the death of Evaline A. Brainerd, leaving issue, I give and devise all the above-mentioned real estate to such issue, and in case there should be no issue her surviving, then I give and devise * * * said land at Passaic to my sons, Melvin Stevens and Clarence Stevens, as tenants in common."

The two lots which were thus devised comprise the lands which were the subject of the contract in question.

Evaline A. Brainerd had two children, Grace E. Brainerd and Allen W. Brainerd, who, in 1894, were both of age. On the 22d day of November, 1894, the said children, Grace E. and Allen W. Brainerd, and Melvin Stevens, all being unmarried, conveyed all their right, title and interest in said lands to the said Evaline A. Brainerd, and on November 26th, 1894, Clarence Stevens, also unmarried, conveyed his right, title and interest in the said lands to Evaline A. Brainerd. On November 23d, 1894, Evaline A. Brainerd and her husband, by a deed with warranty, conveyed said lands to the complainant Jennie T. Lamprey.

The bill asserts that Allen W. Brainerd afterward died unmarried; that Grace E. Brainerd, after the execution of her deed to Evaline A. Brainerd, intermarried with one John T. Underwood, and is now living with her said husband, with possibility of issue hereafter to be born.

The defendant admits, by his answer, the facts asserted in the bill above mentioned, and contends that if Grace E. Underwood should die before her mother, Evaline A. Brainerd, leaving issue, such issue would become seized of the said lands, and that the title made by the conveyance from Grace E. Brainerd to Evaline A. Brainerd would be wholly defeated by the happening of such contingency.

It does not admit of any doubt that the devise in the will of Nathan Stevens is one which falls within the provisions of the "Act further regulating the descent of real estates," passed June 13th, 1820, and which have been in force since the passage of that act, and are now included as sections 10 and 11 of the "Act directing the descent of real estate." *Gen. Stat. p. 1193.*

The devise is a counterpart, in all respects except two, of the devise considered in the celebrated case of *Hopper* v. *Demarest, 1 Zab. 525; S. C., 2 Zab. 599.* The devise in that case was to testator's daughter, Catherine, for and during her life, and after her death the lands devised were to be equally divided among her heirs. The devise before us is to testator's daughter, Evaline, for life, and upon her death to such issue as she may leave surviving her, with the condition of a devise over in case of no issue surviving her.

The section of the act of 1820, which is now section 10 of the Descent act, was admitted to be applicable to the devise which was the subject of consideration in *Hopper* v. *Demarest,* both in the supreme court and in the court of errors. The provisions of that section are equally applicable to the case in hand. It is thereby enacted that if any lands are thereby devised to any person for life, and "at the death of the person to whom the same shall be devised for life, to go to his or her heirs, or to his or her issue," then "said lands shall go to and be vested in the children of such devisee equally, to be divided between them as tenants in common in fee."

In expressing the opinion of the supreme court upon the construction of this statute, in its application to the devise considered in *Hopper* v. *Demarest,* Chief-Justice Green, with the concurrence of Mr. Justices Whitehead and Randolph, declared that the devise in the will then in question would have given to the daughter to whom the testator devised it for life an estate in fee-simple, by virtue of the rule in *Shelley's Case.* He further held that the first section of the act of 1820, now section 10 of the Descent act, entirely abolished the rule in *Shelley's Case,* and gave to the devises therein described a statutory significance and meaning. He also held that the estate, which, by the meaning which that statute required the court to attribute to such language in the will then in question, went to the children of the tenant for life, was not a vested, but a contingent, estate. This construction, though admitted by the learned chief-justice to be apparently counter to the purpose of the legislature, was deemed to be rendered necessary by the language of the last clause of the section, which provided that the children of the devisee for life should take the lands as tenants in common in fee, but if only one child, then that one should take the lands in fee, and if "any child be dead, the part which would have come to him or her shall go to his or her issue in like manner."

The last clause was deemed to be clearly indicative of a legislative intent that the lands, or some part thereof, should go to the issue of a child if such child had died in the lifetime of the tenant for life. The declaration of the distinguished chief-justice that the legislation, thus construed, entirely abolished the rule in *Shelley's Case,* was correct in its application to the case then under consideration, but it has been since pointed out that the legislation in question is limited to cases within its terms, and that in other cases the rule in *Shelley's Case* is still in force in this state. *Lippincott* v. *Davis, 30 Vr. 241.*

When the case of *Hopper* v. *Demarest* was reviewed in the court of errors the applicability of the provisions of the act of 1820 to such a devise as was then in question was admitted, both by Chancellor Halsted, who delivered the prevailing opinion of the court, and by Mr. Justice Carpenter, whose dissenting

opinion closely followed the lines of Chief-Justice Green's opinion in the supreme court. But Chancellor Halsted, with the concurrence of a majority of the court, gave a construction to the statute which was different from that given in the supreme court. He concluded that the estate, which, under the statute, devolved upon the children during the lifetime of the tenant for life, was not a contingent estate, but was a vested estate. This decision, for obvious reasons, was much criticised at the time it was pronounced, but it has been frequently recognized since as laying down the rule which must be followed in respect to the transmission of property by devises of this sort. *In re Heaton, 6 C. E. Gr. 221; Ross* v. *Adams, 4 Dutch. 160; Lippincott* v. *Davis, ubi supra; Zabriskie* v. *Wood, 8 C. E. Gr. 541.*

But the case of *Hopper* v. *Demarest* did not require the consideration of the question which is presented here. In that case it appeared that the daughter of the tenant for life, whose conveyance of the title had been made during the lifetime of the tenant for life, had, in fact, survived her mother. The estate, which, by the devise, had become vested in her, under the construction given to the statute by Chancellor Halsted, was, therefore, not devested by the contingency provided for in the last clause of the section in question.

But in the case before me the title conveyed by Mrs. Underwood, before her marriage, was such title as she acquired by the devise in Nathan Stevens' will, construed in conformity with the provisions of section 10 of the Descent act. It was undoubtedly a vested title, which she might alienate and convey. But if she had conveyed the same, and had died leaving issue during the lifetime of her mother, Evaline A. Brainerd, the question is whether her title, although vested as above stated, would not thereby be devested in favor of such issue. If her title would be thereby devested, then the title of her grantee would also be devested upon the happening of that contingency. As the grantor is yet married, and of an age rendering it possible that issue may be born to her, and it is possible that she may die before her mother, the further question is whether a purchaser, whose title to a material part of the lands is derived from her conveyance, should be compelled to take a title subject to such

contingency. I do not think that there is the least doubt that if, under the proper construction of the statute applicable to this devise, the title of Mrs. Underwood or that of her grantee would be devested by her death, leaving issue, in the lifetime of her mother, that it would not be equitable to compel the purchaser to take the title upon her grant.

I have been unable to discover any authoritative exposition of the statute in question in respect to the point now presented. In *Hopper* v. *Demarest* the supreme court construed the last clause of the section, now section 10 of the Descent act, as giving to the issue of a child deceased during the life of the tenant for life an estate in the lands, and upon the ground that the event upon which such issue was to take could not be determined before the death of the tenant for life, it was held that the estate of any of the children was contingent and not vested. In the prevailing opinion in the court of errors the construction given to the last clause of the section, as effective in determining the legislative intent of the enactment, was repudiated. What the true construction of that clause was the court was not called on to declare, for the reason above given, viz., that the child whose conveyance was then in question had, in fact, survived her mother, and the contingency, consequently, had not happened. Chancellor Halsted, however, admitted that the clause was open to two constructions. This was his language: "And if this last clause can be construed as doing anything more than declaring what would be the result in case the person in whom the remainder was vested had not conveyed it, and had died leaving children; if it can be considered as legislating an additional limitation to the estate, my opinion is that it is a limitation by way of executory devise. If it is an executory devise, then the person to whom Maria, in Catherine's lifetime, conveyed took subject to be defeated of her estate by the happening of that contingency on which the executory devise was to take effect."

It will be perceived that, by one suggested construction, the last clause of the section in question is treated as a mere legislative declaration of the mode in which the title of a child, dying in the lifetime of the tenant for life leaving issue, would

devolve, if the child had not previously disposed of the title. By the other suggested construction the title of a child is subjected to a limitation over to his or her issue, in the event of death, leaving issue, in the lifetime of the tenant for life. Whether the interest or estate thus limited over is properly called an executory devise it is immaterial to inquire.

A construction of this legislation which attributes to it an intent to vest in the child of the devisee for life an indefeasible estate seems to me entirely inadmissible. In the first place, the last clause of the section expressly declares that the child's estate, in the event of death, leaving issue, during the life of the devisee for life, shall devolve, not on the heirs-at-law, but on the issue. *Lippincott* v. *Davis, ubi supra.* And, if there is to be attributed to the word "issue," as so used, the meaning of "heirs-at-law," the clause was wholly unnecessary, and might have been omitted from the act. For, without that clause, an estate which was vested and would devolve upon heirs-at-law, in the absence of conveyance or devise, would have resulted from the previous enactment.

Whether, as was suggested by Chief-Justice Green, the last clause of the section was inserted by inadvertence, or design, it is a part of the legislative act, to which the rules of construction require a court to attribute some meaning, if a reasonable meaning, consistent with the rest of the section, can be discovered therein. That distinguished jurist found in the language of that clause a legislative intent to limit over the estate of a child to his or her issue in the event of death, leaving issue, during the lifetime of the devisee for life, and on that ground pronounced the child's estate to be a contingent remainder. The court of errors, while denying the effect held by the supreme court to have been produced by his construction, admitted that the language, under that construction, could be held to limit over the estate of a child to his or her issue in the event of death, leaving issue, during the lifetime of the devisee for life.

In my judgment, there is no possible meaning to be given to the last clause of the section in question other than that which defeats the estate of a child of the devisee for life, in the event

mentioned, and vests that estate, upon the happening of that event, in the issue of the child.

The result is that, while the conveyance tendered to the defendant will vest in him a title to the lands which he contracted to buy, that title, in respect to so much of the estate as Mrs. Underwood has therein, would be subject to the possibility of its being devested in case she died before her mother leaving issue. This liability will undoubtedly affect the marketable value of the estate, and I do not think that a purchaser should be compelled to accept a title affected thereby.

The bill must be dismissed.