NEWTON PEER, EXECUTOR, &c., OF JACOB N. PEER, DECEASED, PLAINTIFF AND DEFENDANT IN ERROR, v. MARTIN HENNION AND ROBERT LUCAS, DEFENDANTS AND PLAINTIFFS IN ERROR.

Submitted March 23, 1909—Decided June 15, 1909.

A testator, after devising certain pieces of land to his daughter Catherine, provided thus: "The said lands, heretofore given by me to my daughter Catherine are given for and during her natural life; and after her decease I do give and devise the said lands to such person or persons as shall be her heir or heirs of land held by her in fee-simple." *Held,* that the words "heir or heirs" are *designatio personarum* who should take the remainder; that those persons do not take by descent as heirs of Catherine, but take by purchase from the testator; that the rule in Shelley's case does not apply, and that Catherine takes only an estate for life.

On error to Supreme Court.

For the plaintiff and defendant in error, *Vreeland, King, Wilson & Lindabury.*

For the defendant and plaintiff in error, Robert Lucas, *Joshua R. Salmon* and *Charlton A. Reed.*

The opinion of the court was delivered by

REED, J.   The judgment brought up by this writ of error was entered upon the finding of the trial judge in an action brought in the Supreme Court, a jury having been waived by the parties.

The action was for trespass *quare clausum fregit,* and involved the right of possession flowing from title to the *locus in quo.*   The solution of the question of title rests upon the construction to be given to a clause in the will of one Jacob N. Peer.

Jacob N. Peer died, leaving a daughter, Catherine.   To this daughter he devised, with other property, the *locus in quo.*   Catherine died, having by her will devised the same to Robert Lucas, a defendant, the other defendant claiming possession as the licensee of Lucas.   The defendants, therefore, claim under the devise by Catherine.

The plaintiffs claim under the will of Jacob N. Peer, they insisting that Catherine took only an estate for life in the *locus in quo* under the will of her father, and that after her death the property, by the terms of that instrument, became theirs as devisees designated in the will of Jacob N. Peer to take the property after the death of Catherine.

The provisions of the will of Jacob N. Peer to be construed are substantially as follows:   The testator first gives to his daughter Catherine certain parcels of land, including the property in question, in general terms.   Then follows this clause:   "The said lands hereinbefore given by me to my daughter Catherine are given for and during her natural life, and after her decease I do give and devise the said lands

to such person or persons as shall be her heir or heirs of land held by her in fee-simple."

The plaintiff represents the interest of Jacob N. Peer, being one of those who, in the language of the above clause, was at the time of the death of Catherine her heir of lands held by her in fee-simple.

The defendant, as has been stated, represents whatever interest Catherine took under her father's will.

That the intention of the testator was that Catherine should take a life estate only is manifest. The testator says so in express unequivocal language. That the testator's intention was that the property after her death should go to the class of which Jacob N. Peer was one is equally manifest. The testator says so in clear unambiguous language.

The court, in its judgment below, effectuated this clear testamentary intention.

But it is insisted by the plaintiff in error that, by a certain judicial rule of construction, known as the rule in Shelley's case, the actual testamentary intention is of no account, as the courts have fixed a constructive intention upon a grant or devise couched in the language employed by the testator in this case.

The rule in Shelley's case, as defined by law writers and judges, need not be now restated. The purport of the rule, in the language of Mr. Justice Depue, employed in his opinion delivered in *Martling* v. *Martling*, in this court, 10 *Dick. Ch. Rep.* 771, 782, is stated to be this: "Where lands are given to A for life, with a limitation over of an estate, which in terms is expressed to be given to his heirs, the estate of the ancestor, though expressly given for life, is by force of this rule enlarged to a fee, the remainder over being executed immediately in the ancestor." Therefore, when it appears that there is a grant or devise of a freehold estate to a person for life, with a limitation over to the heirs of that person, the rule applies as a rule of property. It does not matter that it appears that the testator or the grantor meant that the rule should not apply, or that he asserts that the word "heirs" shall be words of purchase, or that the tenant for life shall in

no case convey a greater estate, nevertheless the rule in Shelley's case is controlling.

To epitomize the words of Mr. Hargraves: When it is once settled that the testator has used words of inheritance according to their legal import; has applied them intentionally to comprise the whole line of heirs of a tenant for life; has really made him the *terminus* or ancestor by reference to whom the succession is to be regulated, it is immaterial whether the testator meant to avoid the rule or not.

On the other hand, before the rule in Shelley's case can be brought into play, it must appear that the condition upon which the rule rests exists. One of these conditions is that the testator when using the term "heirs" employed the words of inheritance according to their legal import and made the tenant for life the ancestor by reference to whom the succession is to be regulated. What the testator meant by heir or heirs should be first adjusted, without the least reference to the thought of the rule in Shelley's case. *Harg. Law Tracts* 574, 576.

The word "heirs" following an estate of freehold indicates succession to the estate of the ancestor by his descendant, but it may be a succession by descent creating an estate in fee or in tail in the ancestor; or the selection of those persons who, by the canons of descent, would be heirs as a mere *descriptio personarum* of the object of the testator's bounty, in which event the heirs take by purchase. *Martling v. Martling, supra.*

The question, then, is whether the words "heir or heirs" were used by Jacob N. Peer for the purpose of limiting the estate given to Catherine to her heirs as heirs, or were used to point out those persons who were to take the property after Catherine's death under his will.

If the testator in the present case had said "after her, Catherine's, death I do give and devise the said land to her heirs," it would have unmistakably created a fee in Catherine under the rule in Shelley's case; but the devise was not to her heirs. The devise of the remainder was to certain persons to be ascertained at the time of Catherine's death.

These persons were to be ascertained by a standard erected by the testator, namely, by discovering who were at the time of Catherine's death the persons who would be her heirs of land held by her in fee-simple.

This language of the testator seems to indicate that the persons to whom the remainder was devised were to take by purchase from the testator himself, and not by descent from Catherine, the life tenant.

Again, there seems to be significance in the fact that the testator, after declaring that Catherine's interest should endure during her natural life, should then employ the words: "I do give and devise the said land to such persons," &c. While, it is true, that if the devise had been to the heirs of Catherine, the employment of these words would not have been significant, yet, used as they are, as a separate devise to certain designated persons, it would seem to indicate that the testator was creating a remainder by purchase.

We are of the opinion that the testator used the words "heir or heirs" as *designatio personarum* who should take the remainder; that those persons did not take by descent as heirs of Catherine, but by purchase from the testator; that the rule in Shelley's case does not apply, and that Catherine took an estate for life only.

The judgment should be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Reed, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Gray, Dill, Congdon, J.J. 16.

*For reversal*—None.