ANN SHUGRUE ET AL., PLAINTIFFS–DEFENDANTS IN ER-ROR, v. RICHARD H. LONG ET AL., DEFENDANTS–PLAINTIFFS IN ERROR.

Submitted December 11, 1911—Decided March 4, 1912.

1. Where there is a devise in trust to pay the net income to A for life, with a discretionary power in the trustees to use part of such income to pay off a mortgage encumbrance upon the land, and after the death of A, a devise in fee-simple to her "heirs at law"—*Held*, that the testator used the words "heirs at law" to designate the persons who at the time of A's death would be her heirs at law, and that consequently the rule in Shelley's case does not apply.

2. Where the particular estate for life devised is equitable and the remainder in fee is the legal estate, the rule in Shelley's case cannot operate to increase the equitable life estate into a legal estate in fee-simple.

3. A devise, in the language of the tenth section of the statute of descents would, in the absence of that section, have invoked the rule in Shelley's case. Where, therefore, as in this case, the form of the devise would not have given rise to the application of that rule, the tenth section of the state of descents will also be inapplicable.

On error to the Hudson Circuit Court.

For the plaintiffs in error, *John Milton.*

For the defendants in error, *Collins & Corbin.*

The opinion of the court was delivered by

WHITE, J.   This was an action of ejectment, tried in the Supreme Court at the Hudson Circuit before Judge Vail without a jury upon a stipulated state of facts, to recover possession of real estate (No. 132 Newark avenue) in Jersey City.   The plaintiffs are the sister and the children of a deceased sister of Mary McBride, they being or including the persons who were at the time of her death her heirs at law. The defendants are the devisees under the will of Mary Mc-Bride, or those claiming under such devisees.   The question in controversy is the application or non-application of the rule in Shelley's case, and arises under the will of Matthew Brady, the father of Mary McBride, which provided as follows:

"*Fifth.* I give, devise and bequeath unto my said executors and the survivors of them all my real estate in trust upon the following terms:

\*          \*          \*          \*          \*          \*

"*Second.* To collect all the rents and revenues of the premises owned by me and known as No. 132 Newark avenue, in Jersey City aforesaid, and after payment of the water rents, interest on the mortgage, insurance and repairs, and other proper charges and expenses, to apply the net revenues thereof towards the support and maintenance of my beloved daughter, Mary, the wife of Hugh McBride, during her natural life, hereby giving to my said executors the discretion to save out of said revenue a part thereof so as to accumulate a fund to pay off the one-half part of the mortgage, now upon said premises and the premises adjoining, and after the payment of said mortgage, to pay over the whole of said revenue to my said daughter, Mary, during the term of her natural life."

(*Third and Fourth.* Authority given to collect rents of 130 Newark avenue and 482 Grove street, forming no part of the premises in question.)

"*Fifth.* After the death of my said daughter, Mary Mc-Bride, I give, devise and bequeath my said lot of land and premises known as No. 132 Newark avenue, in Jersey City, aforesaid, unto the heirs at law of my said daughter, Mary McBride."

At the time of the death of Matthew Brady, the testator, in 1878, Mary McBride had one son living, but he died unmarried and without issue in 1907, three years before her death, which occurred in 1910.

The plaintiffs claim, under paragraph 5 of the fifth section of the will of Matthew Brady, as remaindermen in fee, after an equitable life estate in Mary McBride under paragraph 2 of the same section; whereas the defendants contend that by virtue of the rule in Shelley's case, Mary McBride took an estate in fee-simple under said two paragraphs, and consequently had the complete power to devise the property in question in fee-simple, as she did, to defendants.

Judge Vail, holding that the rule in Shelley's case had no application, decided in favor of the plaintiffs, and the present writ is to review that decision.

The apt and technical words of limitation to create an estate in fee-simple are "heirs forever," or what means the same thing, "heirs," and consequently a devise to "A and his heirs forever," or to "A and his heirs," is exactly the same in legal effect as a devise to "A in fee-simple." If, therefore, the devise in one clause of a will is "to A for life" (or other freehold) and then in the same or another clause of the same will there is a remainder to his "heirs," the latter is in effect a direction that at the exact instant of time when in death the spark of life shall pass from A's body he shall take an estate in fee-simple in the same land, and as a consequence, by virtue of the rule in Shelley's case, the law gives him an estate in fee-simple from the first, that is from the time of the vesting in him of the so-called life estate.

When, however, after the devise to "A for life," the other provision of the will is that at A's death the land is devised in fee-simple directly from the testator, and not as descending from A, to some designated or described persons other than A, the, rule can have absolutely no application, and it is quite immaterial if in naming such other persons the testator, in order to designate them, has described them as the persons who at the moment of A's death were his "heirs," provided it is entirely clear from a reading of the whole will that the use of the word "heirs" was to .designate certain persons to take directly from the testator and not by descent from A, as contradistinguished from that inheriting line theoretically springing and descending from A and extending through all time "forever," which is comprised in the technical meaning of the word "heirs," and whose only real effect or existence is as a measure of the quantity of estate in the land in question of which A died. seized.

While, therefore, it is well settled that the rule in Shelley's case is absolutely and peremptorily controlling as "a rule of property" whenever it appears that the limitation over is to the "heirs," taking as such "heirs," of the life tenant, quite irrespective of the desire or direction of the testator that the first taker should take only a life estate (*Lippincott* v. *Davis,* 30 *Vroom* 241), nevertheless if it appears that the testator did not use the word "heirs" in this, its technical sense, but on the contrary used it as a mere *descriptio personarum* of the objects of his, the testator's, own direct bounty, the rule has no application whatsoever. *Harg. Law Tr.* 574, 576; *Fearne Rem.* 188.

What will indicate such use by the testator of the word "heirs" in the latter and popular, as distinguished from its technical sense, must necessarily vary in different cases.

In *Peer* v. *Hennion,* 48 *Vroom* 693, the testator after devising certain lands to his daughter, Catherine, provided as follows: "The said lands hereinbefore given by me to my daughter, Catherine, are given for and during her natural life; and after her decease I do give and devise the said lands to such person or persons as shall be her heir or heirs

of land held by her in fee-simple." This language was held by this court to have been used by the testator to designate certain persons to be ascertained at the time of Catherine's death as objects of his direct bounty, and not as applying to Catherine's entire line of future heirs to the end of time, and consequently the rule in Shelley's case was held to have no application.

In *Martling* v. *Martling,* 10 *Dick. Ch. Rep.* 771, the conveyance was in fee to trustees in trust to permit the life tenant to receive and enjoy the rents and profits during her natural life free from control by her husband, and in trust to sell and convey in fee-simple at the direction of said life tenant, substituting the proceeds in the trust in place of the land so sold, and upon the death of the life tenant, in trust to convey the unsold lands and to turn over the proceeds of the lands which had been sold, to the appointee of the life tenant, or in default of appointment to "her heirs at law or next of kin, as may be." The fact that the proceeds of a sale of real estate made during the lifetime of the life tenant were not to be paid to her but were to continue in the trust and at her death, in the absence of appointment by her, were to be paid to her "next of kin," moved this court to the view, as expressed in the opinion by Mr. Justice Depue, that "construing this trust from all the limitations and provisions contained in it, it is clear that the terms 'heirs at law' and 'next of kin,' in providing for the ultimate destination of the estate, although the disjunctive 'or' intervenes, should receive the same construction as to the point of time when these two classes of beneficiaries respectively are to be ascertained, and that the words 'heirs at law' as well as 'next of kin' should be construed to mean persons who either as heirs at law or next of kin come into existence at Mrs. Martling's (the life tenant's) death."

In this opinion the classic doctrine laid down by Mr. Hargrave ( *Harg. Law Tr.* 576) and commended by Mr. Fearne (*Fearne Rem.* 188), was cited with approval as follows:

"If it shall be decided that the testator or donor did not mean, by the words of inheritance after the estate for life,

to use such words in their full and proper sense; did not mean to involve the whole line of heirs to the tenant for life, and to include the whole of his inheritable blood; did not mean to engraft a succession on his preceding estate, and to make him the ancestor of *terminus* for the heirs; but, instead of this, intended to use the word *heirs* in a limited, restrictive and untechnical sense; intended to point at such individual person as should be the heir, or heir of the body, of the tenant for life at the moment of his decease; intended to give a distinct estate of freehold to such single heir, and to make *his or her estate* of freehold the groundwork for a succession of heirs; to constitute *him or her* the ancestor *terminus* and stock for the succession to take its course from; in every one of these cases, the premises are wanting upon which only the rule in Shelley's case interposes its authority."

Another indication established by text-writers and decisions of a use by a testator of the word "heirs" as a word of purchase and not as a word of limitation, occurs where the life estate is only an equitable estate and the remainder is a legal estate. Thus where property is devised under an active trust for the benefit of a life tenant and then the legal estate is devised at the death of the life tenant direct to his heirs, the word "heirs" cannot be taken to have been used to indicate a succession or inheritance of the legal estate from the life tenant, because the life tenant never held the legal estate.

Mr. Fearne, in his work on *Contingent Remainders* (*p.* \*52), states this proposition as a rule as follows:

"I shall now proceed to observe, that where the estate limited to the ancestor is merely an equitable or trust estate, and that to his heirs, &c., carries the legal estate, they will not incorporate into an estate of inheritance in the ancestor; as (in general) would have been the case, if they had been both of one quality, that is, both legal, or both equitable."

Numerous cases are cited by Mr. Fearne in support of this rule, the leading one being *Lady Jones* v. *Lord Say and Sele,* 1 *Eq. Abr.* 383, *c.* 4 (21 *Eng. Reprint* 1119), which he states and comments on as follows:

"Where a testatrix devised certain real estate to trustees and their heirs, upon trust and in confidence, in the first place, out of the rents and profits thereof to pay the several legacies, devises and bequests thereinafter mentioned, and then (after giving several annuities for life), she appointed her trustees to pay all the rest and residue of the rents and profits of the premises to the proper hands of her daughter, C. F., or as she by any writing, &c., should appoint, for and during the term of her natural life; and after her (the said daughter's) decease, the trustees to stand seized of the premises to the use of the heirs of the body of her said daughter, C. F., severally and successively as they should happen to be in priority of birth and seniority of age, and the heirs of their respective bodies in tail general, subject to the payment of the several annuities, and in case of failure of the issue of the body of her said daughter, C. F., then to the use of Lady J. After the decease of the testatrix, C. F. and her husband suffered a recovery of the lands, and she afterwards died without issue; upon her decease, Lady J. claimed the lands under the will, by virtue of the remainder thereby limited to her.

"It was contended for the plaintiff (Lady J.) that C. F. took only a trust estate for life by the will, with a contingent remainder to the heirs of her body in tail general; that the direction to the trustees to pay the residue of the rents, &c., to the proper hands of C. F., who was a married woman, gave her a mere trust, and not a use executed by the statute. It was a trust for her separate use, and to construe it an use executed, would be to subject it to the power and control of her husband. That the subsequent limitation to the heirs of her body severally, &c., was a use executed by the statute, and could not be consolidated with the precedent trust limited to C. F. for life, so as to create an estate tail in her. That the subsequent words, in case of failure of issue of the body of C. F., then to Lady J., &c., did not create an estate tail in C. F. by implication nor enlarge the precedent estate, because no legal estate vested in C. F. On the other side it was contended, that the legal estate passed to the

trustees and their heirs; and if it passed in 'fee, then all the subsequent uses were uses upon a use, and consequently trusts not executed by the statute; and if the estate given to C. F. for life, and the subsequent limitation to the heirs of her body, were both trusts, they might be consolidated together and create an equitable estate tail; and that in this case, either both the estate were executed or neither.

"But Lord Chancellor King ·was of opinion that by the words of the will the use was executed in the trustees and their heirs during the life of C. F., and that she had only a trust in the surplus of the rents and profits during her life; but that by the subsequent words, viz., that the trustees should stand seized to the use of the heirs of the body of C. F. subject to the payment of the annuities, &c., the use was executed in the persons entitled to take by virtue thereof, chargeable with the payment of the annuities; and therefore there being only a trust estate in the ancestor, and an use executed in the heirs of her body, those different interests could not unite, so as to create an estate tail by operation of law in the ancestor; and he decreed accordingly for the plaintiff."

This rule seems also to have been passively approved by the Supreme Court of the United States in the recent case of *Vogt* v. *Graff*, 222 *U. S.* 404, where it is stated in the syllabus of the case that "The rule in Shelley's case does not apply where the particular estate is equitable, and the estate in remainder legal."

Coming now to the present case, we find that the trust estate in favor of the life tenant, Mary McBride, is not only a trust in the trustees to collect and apply the net income, after the payment of water rents, mortgage interest, insurance and repairs and other proper charges, towards the support and maintenance of the life tenant, but that there is also vested· in the trustees an absolute discretion to ·reserve a part of said'net income for the purpose of discharging a mortgage encumbrance against the property in question. This discretion thus reposed in the trustees is certainly

quite inconsistent with the idea of an absolute fee-simple in the life tenant and would of course be completely destroyed by the creation of such an estate in her. Then when we come to the subsequent paragraph wherein the testator after the death of the life tenant disposes of the remainder we find that he does so not only in the form "I give, devise and bequeath," which he would naturally use in making a direct devise to definite persons, but he names the objects of his bounty as the "heirs at law" of his said daughter, the trust life tenant, thus seeming to indicate persons who at the time of her death would be her heirs at law. These expressions taken in conjunction with the evident purpose of the testator as indicated by the previous paragraph (No. 2) wherein the trust life estate with the discretion in the trustees is created, and also in connection with the fact that the life tenant held only an equitable estate out of which her heirs of course could not inherit from her a fee, lead us to the conclusion that the testator used the words "heirs at law" as a *designatio personarum,* and that consequently the rule in Shelley's case cannot be applied.

A suggestion has been made, in which counsel both for the plaintiffs and for the defendants appear heartily to agree, that the tenth section of the statute of descents has no application to this case. With this view we are also in accord. A devise in the language of that section before its enactment would clearly have invoked the rule in Shelley's case, and as the language or form of the devise in the present case is not subject to the application of that rule, the statute is necessarily equally inapplicable.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, JJ. 14.

*For reversal*—None.